LONG, MONTGOMERY, and HOOKER, JJ., concurred. GRANT, J., did not sit.

———◆———

MARTIN V. MONTGOMERY, ADMINISTRATOR OF THE ESTATE OF JOHN O. GRINNELL, DECEASED, v. THE LANSING CITY ELECTRIC RAILWAY COMPANY.[1]

*Street railways—Gross negligence—Proximate cause—Pleading— Damages—Evidence.*

1. Plaintiff's intestate, while engaged with other members of a band in giving a street parade, and while walking near defendant's track ahead of an approaching car, was overtaken and struck by the car. The motorman knew that the band was ahead of the car, and that deceased was in close proximity to the track. He heard the band playing, and knew that the noise of the car would be liable to be drowned by the noise of the band, yet, if the testimony of plaintiff's witnesses be true, he did not slacken his speed, but kept the lever in next to the fastest notch, at least until within a few feet of the members of the band. The car, according to the testimony, ran over 30 feet after striking the deceased. It appeared from the testimony of the motorman that, if he had

[1] The suit was commenced in the name of Grinnell. After the rendition of the verdict in the circuit he died, and the suit was revived in the name of his administrator.

had the car under control, he could have prevented the injury. And it is held that, notwithstanding the negligence of the deceased, it was a question for the jury to determine whether or not the motorman used that care and caution which, under the circumstances, he was bound to exercise, in view of the danger as he must have seen it.

2. In a personal injury case the declaration averred that the plaintiff was seriously hurt, wounded, and crippled, and his back and spine seriously hurt, crippled, bruised, sprained, and injured, by his being struck by the defendant's car, which injuries were permanent and incurable. A physician was allowed to testify that the condition of plaintiff's lung—chronic inflammation of the lung—and the tenderness of the spine might result from a severe injury to the back and spine. The testimony was objected to on the ground that no injury to the lung was averred in the declaration. And it is held that the declaration is sufficient to admit the evidence, under the rule laid down in *Johnson v. McKee*, 27 Mich. 471, which does not require the plaintiff to aver all the physical injuries which he sustained, or which may have resulted from or been aggravated by the tort, even though they do not necessarily result from the original injury; that if such injuries can be traced to the act complained of, and are such as would naturally follow from the injury, they need not be specifically averred.

Error to Ingham.    (Person, J.)    Submitted on briefs October 12, 1894.    Decided December 18, 1894.

Negligence case.    Defendant brings error.    Affirmed. The facts are stated in the opinion.

*Moore & Moore* and *Smith, Lee & Day,* for appellant.

*M. V. & R. A. Montgomery,* for plaintiff.

LONG, J.    May 22, 1893, John O. Grinnell, the deceased, and eight others, constituting the Frank Tucker Theatrical Company, were engaged in giving a street parade in Lansing.    They had gone to North Lansing, and had returned on a street car, getting off the car a few blocks below Michigan avenue, where the car stopped.    They passed ahead of this car, four walking on one side of the car

track, single file, about six feet apart; the others walking on the other side of the track, in the same order. Mr. Grinnell was on the east side, and near the track. Six were ahead of him, each playing a wind instrument, and two behind him playing snare and bass drums. He was playing a cornet. The car from which they alighted followed soon after, and overtook them just as they reached Michigan avenue. The platform of the car passed Grinnell, but the body of the car struck him on the shoulder, knocking him down. Mr. Grinnell on the trial testified:

"I was very near the car track, but not between the rails. I remember something striking me. I heard nothing; heard no bell indicating any warning. I recollect something struck me, and after that the first thing I knew I was on my feet, and people were holding me up. I was struck about at the point of the right shoulder blade. I knew I was hurt as soon as I came to my senses. They took me to the hotel. Two of my teeth were loose, besides one that was knocked out. After getting to the hotel, and while confined there, I discovered the injury to my back, my arm, and my right side, and a slight injury to my right hip. I got hurt on Monday, and got out on Friday. Before leaving the hotel, I noticed a sore spot on my right chest, perhaps two or three days after the accident. It was followed by spitting of blood. I never had anything of that kind before. This spitting of blood continued for about two weeks. At the end of two weeks, or perhaps a little longer, I had a dry cough started,— hacking cough,—and I had it ever since up to about five weeks ago, and from that time until now I have been coughing very bad, and it is growing worse all the time. When I was hurt I weighed about 132 pounds; now I weigh about 109 pounds. Aside from whooping cough and scarlet fever, which I had when quite small, I have never been sick."

He was asked:

"State to the jury whether you were thinking about or looking out for any indication that a car was coming.

"A. Yes, sir; I always did, because I always had to walk so close to the track. I was playing at the moment I was hurt. I thought I was far enough from the track

to be out of the way. I was looking out for the car, and was positive that I would hear the signal, if there was any near."

On further examination, Grinnell testified that he knew the car could not pass without hitting him, but that he was looking out for it, and had no doubt that he could hear the bell and get out of the way.

Some considerable testimony was given tending to show that no bell was rung or other warning given when the car approached Michigan avenue, where the accident happened, and there was testimony also that the car was running at a rate of speed greater than usual, and that it did not slow down when it reached Michigan avenue. Just what rate of speed it was going plaintiff's witnesses do not state, but many of them say that it was faster than the car usually ran, and some say it was running rapidly. One witness testified that he had been in the employ of the defendant company before that time; that he noticed the car approaching the band, and, when within half a car length of Grinnell, he noticed the lever in the fourth notch,—that is, next to the last notch,— the last notch giving the car the fastest speed it could attain, and that no bell was sounded. Both the motor-man and the conductor, as well as others, testified that the bell was sounded, and that they were going slow, the motorman saying, "Not more than three miles an hour." The conductor testified, further, that his orders were to slow down at the Michigan avenue crossing. The motor-man testified that a high wind was blowing from the west, and, as he saw the members of the band ahead of him, his attention was directed to the man carrying the bass drum, as he feared he would be blown upon the track; that he saw Grinnell; saw him brace up against the wind, but did not pay so much attention to those on the east

side, as he was afraid the wind would carry those on the west side onto the track. He says that when about five or six feet from Grinnell he saw him; that he was walk-ing along blowing his horn, and as the wind came down Michigan avenue he leaned over to protect himself against it, and that was the reason the car struck him; that, if Grinnell had continued to walk the same distance from the track, the car would not have struck him. The motorman denies that the lever was in the fourth notch, and says that he did not have any current on when he crossed Michigan avenue, but that he ran about 34 feet after he struck Grinnell. On his cross-examination he was asked:

"Suppose you had run up behind these people carefully and slowly, until you had attracted their attention by your bell, that would not have been a difficult job?

"*A.* Oh, no."

Under this testimony, the court directed the jury:

1. That Grinnell was guilty of negligence, and "under some circumstances this would prevent a recovery, but in this case it may or may not, as you may determine re-garding certain other facts to which I shall call your attention."

2. "The car which struck the plaintiff had that same forenoon carried the band to North Lansing. The same conductor and motorman were in charge. They knew that the band paraded Franklin street. They had brought this band from the Franklin-street parade down Wash-ington avenue to Ionia street, and there let the band off. The band from that point· had proceeded down Washing-ton avenue, to the knowledge of the street-car men, had passed the street car in front of the bank, was in plain view of the motorman when the car started, and the motorman knew what the purpose of the plaintiff and the other members of the band was in being on the street. It was not a case where the injured party was supposed to be crossing the street, but it is a case where the motor-man in charge of the car knew that the band was parad-

ing the street, knew that their backs were towards him, knew the positions of the members of the band, and knew the noise they were making with their instruments.

"It is sometimes very correctly said that if one discovers another to have been negligent he must take precaution accordingly, omitting which, he is liable to the other for the damages which follow from his own want of care; for, however nearly related two separate negligencies may be, the one cannot bar an action for the other unless it is contributory, and, though an unseen position might contribute to an accident, a discovered one cannot.

"The plaintiff, Grinnell, was not a trespasser upon the street-car tracks in any sense. The right of the street railway in the street is only to use the street in common with the public. It has no exclusive right of travel, even upon its track; and it is bound to use the same care in preventing a collision as is the driver of a wagon or other vehicle. Street cars have precedence necessarily in the portion of the way designated for their use. This superior right must be exercised, however, with proper caution and due regard for the rights of others; and the fact that it has a prescribed route does not alter the duty of the defendant to the public, who have a right to travel upon its track until met or overtaken by its cars. There is no question made in this case but that the motorman saw this band. He says that he saw the plaintiff, and he says that because of the wind he was watching the man with the bass drum, on the west side of the track.

"If the plaintiff, Grinnell, and other members of the band, were, or if the plaintiff, Grinnell, alone was, when viewed from the motorman's position on the car, in a place of danger, either on or near the track, it was the duty of the motorman, taking into consideration his knowledge of the situation and of the purpose and intention of the band,—it was the duty of the motorman to run his car with corresponding care, and in a manner reasonably safe under the circumstances, both as to speed and control; and if, under these circumstances and such duty, the motorman intentionally ran his car at what he knew was a high and dangerous rate of speed, not, indeed, intending to injure any one, nor wishing to injure any one, but in reckless disregard of the consequences to the plaintiff and members of the band, and if because thereof the plaintiff was injured, then the company was to blame,

and the defendant railway company is liable to the plaintiff for 'whatever injury it so caused him.

"If the plaintiff, Grinnell, was not in a place of danger, as viewed from the motorman's position, then the railway company is not liable.

"If the car was not running at a rate of speed which the motorman knew, or a reasonable man ought to have known, dangerous and improper under the circumstances, the company is not liable.

"If the company, through its agents and servants, was not wanton and reckless under the circumstances, it is not liable. Whether the company is or is not liable you are to determine. In other words, you are to determine whether or not the plaintiff has shown, by a preponderance of the evidence, that, under the facts and circumstances known to the motorman, and in view of things as they appeared to him, this car was run at a high and dangerous rate of speed, with a reckless or wanton disregard of consequences, and whether the injury was caused thereby. If these things have not been so shown, the defendant is not liable; if they have been so shown, it is liable."

We think this charge justified by the evidence. The motorman knew that the band was ahead of the car. He recognized the danger of those on the west side being blown upon the track. He saw Grinnell, and knew he was in close proximity to the track; heard the band playing, and knew that the noise of the approaching car would be liable to be drowned by the noise of the band; yet, if the testimony of the plaintiff's witnesses be true, he did not slacken his speed. He kept the lever in next to the fastest notch, at least until within a few feet of these parties; and the testimony shows the car must have been under considerable speed, as it ran over 30 feet after causing the injury, though the motorman claims to have stopped it as soon as he could after it struck; while, if he had had it under control, it is plain, from his own testimony, he could have prevented the injury, and if going at the usual speed he could have stopped it within 10 or 15 feet. It was a question for the jury to determine

whether he used that care and caution which, under the circumstances, he was bound to exercise, in view of the danger as he must have seen it.

Defendant's counsel contend that the evidence establishes the fact that Grinnell's negligence alone caused the accident. We do not think this can be said as a matter of law. There was evidence from which the jury might well find that the motorman was guilty of reckless and wanton conduct in driving his car at a high rate of speed as he approached these people on Michigan avenue.

Counsel for defendant cite a long line of cases, holding that one may be guilty of such gross carelessness as to bar recovery; such as driving upon a track in front of an approaching car without looking around until the car runs into the vehicle. *Wood v. Railway Co.*, 52 Mich. 402; *Kelly v. Hendrie*, 26 Id. 255. In *Michigan Central R. R. Co. v. Campau*, 35 Mich. 468, the deceased, walking on a railroad track, stepped out of the way of an approaching train, and was struck by another train from behind; and in *Graf v. Railway Co.*, 94 Mich. 579, cars were being shunted onto a siding, and the deceased attempted to pass in front, and was killed. Other cases of like character are cited, but each case cited depended upon its own peculiar facts. It is settled that, when one attempts to cross in front of an approaching train in plain view, he takes his chances of being injured, and cannot complain. In the late case of *McGee v. Railway Co.*, 102 Mich. 107, the plaintiff attempted to cross the street in front of an electric car, and was injured. It was held that he was bound to look for the approach of the car, and, not having looked, he was guilty of such carelessness that he could not recover. In the present case it is conceded that Grinnell was careless, and, but for the gross carelessness of defendant's servants charged in the declaration and proved on the trial, he could not recover. It is quite a different case than

where one attempts to cross in front of the car. Here the motorman saw the situation. He apprehended the danger to those in the street, and yet, if plaintiff's testimony be true, he did nothing to avoid the accident.

The court, in directing the attention of the jury to this branch of the case, stated the rule as to gross negligence as laid down in *Richter v. Harper*, 95 Mich. 221. In that case it was said:

"It is true that the contributory negligence of the plaintiff does not prevent recovery in a case where the defendant, who knows, or ought, by the exercise of the most ordinary care, to know, of the *precedent* negligence of the plaintiff, by his *subsequent* negligence does plaintiff an injury."

As stated by Mr. Justice Cooley, in his work on Torts (page 674):

"In such cases it may be said that the negligence of the plaintiff only put him in position of danger, and was, therefore, only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause."

In *Hanlon v. Railway Co.*, 104 Mo. 388, the court, after stating that one going upon the track of a railroad should observe all such precautions for his own safety as reason and prudence dictate, and if disaster comes upon him by reason of a failure to do so he must bear the consequences, say:

"This rule has, however, a qualification which is founded upon principles of humanity, and is universally recognized. This qualification enjoins upon the railroad company the duty of using all reasonable efforts to avoid injury to one who has negligently placed himself in a position of danger, if the peril is known, or, under certain circumstances, by reasonable care might have been known. A failure to observe this requirement renders the company liable, notwithstanding the previous negligence of the person injured."

In *Hicks v. Railway Co.*, decided in July, 1894, by the

Missouri supreme court, and reported in 124 Mo. 115, this case in 104 Mo. 388, was cited and approved; and it was there said, substantially, that the court could not say, as matter of law, that the plaintiffs were not guilty of contributory negligence; but defendant's gripman saw plaintiffs in their dangerous and exposed situation, and the question was whether after that he acted with due care towards them.

The cases do not attempt to define these acts as gross negligence, but place the right of recovery upon the ground that the proximate cause of the injury is the act of the defendant. In the present case the testimony shows that the motorman saw the danger Grinnell was in. It is common knowledge, and not disputed on this record, that when the electric car and its appliances are in proper condition the motorman has perfect control over it. He may run it at so slow a rate of speed that it can be stopped at once,—almost in an instant. Here the motorman saw the danger. He should have slowed down, and, if necessary to avoid danger, stopped his car. In any view which may be taken of the case, we think there was testimony to warrant the charge, and that the charge as given is within the well-recognized rules, and that it fairly left to the jury the question as to the proximate cause of the injury.

We think there is but one other question that merits discussion. In the opening of counsel for plaintiff, he stated to the jury that the accident caused an injury to Grinnell's lung. When one of the witnesses was called to testify to the injuries which Grinnell had sustained, defendant's counsel objected to any evidence of injury to the lung, as such injury was not alleged in the declaration, and that it was not alleged in the declaration that Grinnell had a disease of a lingering character. Some comment was made by the court upon the declaration,

and a suggestion was made to amend, but finally counsel
for plaintiff insisted that the declaration was sufficient to
admit the proofs offered in regard to the condition of the
lung. These proofs were admitted under objection and
exception of defendant's counsel. Two physicians were
called who had examined Mr. Grinnell a few days before
the trial, and who testified to his then condition; that
they found tenderness of the spine, depression of the
right chest, and dulness and tenderness showing a solidifica-
tion or hepatized condition of the right lung. They also
testified to some other conditions. One of the physicians
was then asked to state—

"If either, and which, of the conditions which you now
find and describe would naturally result from a severe
injury to the back and spine occurring the latter part of
May last.

"A. The condition of the lung,—chronic inflammation
of the lung,—and the condition of his spine, I think,
might result. It is fair to suppose that it did."

Their testimony tended further to show that by reason
of the injury his lung was affected, and consumption had
resulted. The court, in its instruction to the jury, stated
substantially that if they found for the plaintiff he was
entitled to recover for the injury to his lungs.

It is insisted by counsel that this was error; that, if
this claim was insisted upon, the defendant had the right
to look up Grinnell's past history, and they had no oppor-
tunity to do so, as the trial was then in progress. It does
not appear that after the court concluded to admit this
class of testimony the defendant asked for a continuance.
When it was proposed to amend the declaration, the court
stated that, if the amendment were allowed, he should
grant a continuance. The proposition to amend was with-
drawn, and the proofs taken under the declaration as it
stood. When the court announced this ruling, no motion
was made for continuance, and no further claim made that

defendant was taken by surprise. The only question, therefore, which arises is whether the declaration was sufficient to admit this proof. Counsel for defendant contend that it has been settled by many cases in this Court that the plaintiff cannot recover for injury to his lung, and for consumption resulting from the injury, without an allegation to that effect in the declaration. The declaration alleges:

"That, when said car so struck said plaintiff as aforesaid, the blow and collision resulting therefrom seriously hurt, wounded, and crippled said plaintiff; his eyes were badly bruised and discolored; his face and head badly bruised, and some of his teeth loosened, and his lips cut and lacerated; his arms seriously bruised and strained thereby; his back and spine seriously hurt, crippled, bruised, and sprained, and injured; and he was by said blow and collision rendered immediately insensible, in which insensible condition he continued for a long space of time next thereafter, to wit, for the space of one day. That said injuries so inflicted upon his head, face, lips, teeth, arm, back, and spine were permanent and lasting, and each and all are incurable."

The cases relied upon by defendant's counsel, showing these proofs inadmissible under this declaration, are: *Fuller v. City of Jackson*, 92 Mich. 197; *Kuhn v. Freund*, 87 Id. 545; *Shaw v. Hoffman*, 21 Id. 151; *Brink v. Freoff*, 44 Id. 69; *Allen v. Kinyon*, 41 Id. 281; *Krueger v. Le Blanc*, 62 Id. 70; *Hatt v. Association*, 94 Id. 119; *Bateman v. Blake*, 81 Id. 227; *Wilkinson v. Spring Works*, 73 Id. 405; *Shadock v. Plank Road Co.*, 79 Id. 7; *McDuff v. Journal Co.*, 84 Id. 1.

We think none of these cases support this contention. The case of *Johnson v. McKee*, 27 Mich. 471, lays down the true rule, and has never been overturned. Some language has been used in later decisions which, upon a casual reading, might seem to have modified the former ruling; but, upon an examination of the exact questions

involved in each instance, the distinction will be observed. The declaration in *Johnson v. McKee* is substantially that defendant assaulted plaintiff, and struck him a great many violent blows on and about the face, nose, head, and body, thereby severely wounding the plaintiff upon the face, head, and body, breaking the cartilage of the nose, and inflicting great and permanent injury upon and to his face, head, and body; "by means of which said several premises said plaintiff was then and there greatly hurt, bruised, and wounded, and became and was sick, sore, and disordered, and so remained for a long space of time, to wit, from the time of said assault to the present;" whereby the said plaintiff was obliged to and did necessarily pay, lay out, and expend $500 in an endeavor to be cured of the bruises, wounds, sickness, soreness, and disorder aforesaid, occasioned as aforesaid.

Mr. Justice CAMPBELL for the Court said:

"The battery consisted in striking McKee with a chair, whereby certain injuries were inflicted on his face and head, and in consequence of which he was seriously, and, as is claimed, permanently, affected. Among other results, there was evidence that he suffered from a urinary difficulty caused or aggravated by the blow. It is claimed this injury was not within the terms of the declaration, and could not be shown without express averment. If the evidence showed any such resulting injury, it showed it to have been as closely connected with the blow as any of the other evil consequences. It was a sickness produced by it in the same way as the swelling and soreness in the head and eyes, and the other grievances about which no question was made on the trial. The declaration charges sickness and pain to have been among the sufferings caused by means of the assault, and we do not think the rules of pleading require any more specific description than was given. We need not inquire how far it was requisite to go in declaring for consequences not necessarily following such an injury, because these consequences are very clearly set forth. When the defendant was informed that damages were sought for sickness and disorder, and their attendant expenses, as well as for wounds and bruises, he was bound

to expect evidence of any sickness the origin or aggravation of which could be traced to the act complained of."

It will be seen that the rule thus laid down does not require plaintiff to aver all the physical injuries which he sustained, or which may have resulted from or have been aggravated by the tort, even though they do not necessarily result from the original injury. If such injuries can be traced to the act complained of, and are such as would naturally follow from the injury, they need not be specifically averred. The testimony in the present case shows that the injury to the spine and back might, and probably would, result in injury to the lungs. *Johnson v. McKee* was cited and followed in *Welch v. Ware,* 32 Mich. 77. In *Elliott v. Van Buren,* 33 Mich. 52, the Court, in speaking of the objection to the evidence tending to prove the continued results of the assault in bodily weakness and malady, and the fact of the plaintiff's suffering from fits, said:

"Upon the first of these points the case is covered entirely by the decision in *Johnson v. McKee,* 27 Mich. 471."

Again, in *Keyser v. Railway Co.,* 66 Mich. 400, the case of *Johnson v. McKee* is cited and approved.

The rule of the case of *Johnson v. McKee* is but the reiteration of the rule laid down by the law writers upon this subject, and adopted by other courts as well as this. Sutherland, in his work on Damages (volume 3 [2d ed.] pp. 2661–2663), says:

"The general rule in tort is that the party who commits a trespass or other wrongful act is liable for all the direct injury resulting, although such injury could not have been contemplated as the probable result of the act done. The plaintiff may show specific, direct effects of the injury, without specially alleging them, as that he was thereby made subject to fits. If they were a part of the result of the injury, the plaintiff may recover for such damage without specially alleging it, as well as the pain

and disability which followed. The obviously probable effects of the injury may be given in evidence, though not laid in the declaration."

In this connection Judge Sutherland cites *Johnson v. McKee.* This rule has been followed in the following cases: *Railroad Co. v. Hecht,* 115 Ind. 443; *Ehrgott v. Mayor,* 96 N. Y. 264; *Delie v. Railway Co.,* 51 Wis. 400; *Schmidt v. Pfeil,* 24 Id. 452; *Birchard v. Booth,* 4 Id. 67; *Morgan v. Kendall,* 124 Ind. 462; *Sloan v. Edwards,* 61 Md. 99; *Hussey v. Ryan,* 64 Id. 426; *Railway Co. v. Harris,* 122 U. S. 597. In this last case it appeared that the plaintiff was injured by a gunshot wound in the hip. Among other things he was allowed to and did prove that one of the consequences of the wound was the loss of procreative power, resulting directly and proximately from the nature of the wound. Mr. Justice Harlan, speaking for the Court, said:

"Because of the fact that the loss did result directly and proximately from the nature of the wound, evidence of this fact was admissible, although the declaration does not in terms specify such loss as one of the results of the wound." See, also, *Tyson v. Booth,* 100 Mass. 258; *Blake v. Lord,* 16 Gray, 387.

This rule does not in any sense overturn the well-established one, that where damages are special they must be specially averred in the declaration. In the case of *Heiser v. Loomis,* 47 Mich. 18, the declaration averred that "plaintiff was greatly hindered and prevented from doing and performing his work and business, and looking after and attending his necessary affairs and avocations." He attempted to recover because "he was bothered some about help, and the cutting of his hay was delayed because of his injury, and his crop damaged." This was held by the Court to be in the nature of special damages, and not recoverable without special averments.

If we turn, now, to the cases cited by defendant's coun-

sel, which they claim uphold their contention as to the injury to the lung, we shall find that it was never intended to overrule *Johnson v. McKee*.    In *Fuller v. City of Jackson* the declaration did not aver that plaintiff had any difficulty with her breast which was aggravated by the injury.    Plaintiff testified to having had such injury, and that after her fall her breast broke out again.    She sought to show that this breaking out was caused by the fall.    Defendant offered proof tending to show that the fall would not produce this particular infirmity.    The court below instructed the jury that plaintiff could not recover for the injury to the breast, unless such injury might have been aggravated by the acts which resulted from defendant's neglect.    This instruction was held to be erroneous, the Court saying that, defendant's theory having been brought into the case for the purpose of accounting for some other trouble, it did not warrant the plaintiff to use it in aggravation of her damages, when there was no averment of any such claim of damages in her declaration.    The case of *Shadock v. Plank Road Co.*, 79 Mich. 7, was cited in support of that ruling.    But the Shadock case was written by Mr. Justice CAMPBELL, who also wrote *Johnson v. McKee;* and the declaration in the Shadock case, it was said, contained nothing more specific than that the plaintiff was hurt, bruised, and wounded; that the word "hurt" was so general as to give no information, while the word "bruised" did not indicate generally more than a temporary contusion; and that the word "wounded" was any injury breaking or cutting the skin.    It is true that the learned Justice cited the rule laid down in 1 Chit. Pl. 386 (4th ed. 347), that—

"Whenever the damages sustained do not necessarily arise from the act complained of, and consequently are not implied by law, in order to prevent surprise of the

defendant, which otherwise might ensue on the trial, the plaintiff must, in general, state the particular damage which he has sustained, or he will not be permitted to give evidence of it."

But this had especial reference to special damages, for the learned Justice, in connection with the statement of this rule, says:

" The rule which requires special damages to be alleged would be useless, unless so alleged as to give definite information."

In *Kuhn v. Freund* none of the counts of the declaration contained any allegation of permanent injuries.

It will therefore be seen that it was not intended to overrule *Johnson v. McKee,* and that it has not in fact been overruled.

The judgment must be affirmed.

McGRATH, C. J., MONTGOMERY AND HOOKER, JJ., concurred. GRANT, J., did not sit.