BEDELL v. DETROIT, YPSILANTI & ANN ARBOR RAILWAY.

STREET RAILWAYS—INJURY TO TRAVELER ON HIGHWAY—CON-
TRIBUTORY NEGLIGENCE—SUBSEQUENT NEGLIGENCE OF DEFEND-
ANT.

> Plaintiff's intestate rode along the highway on his bicycle for
> a considerable distance in dangerous proximity to the track
> of an electric railway, and in plain view of the motorman of
> a car coming from behind, and finally dismounted on the
> track, and was struck by the car and killed. He was signaled
> to and warned by his companions, but, apparently from deaf-
> ness, did not understand the signals, and was not aware of
> his danger. *Held*, that his negligence would not preclude a
> recovery against the company, if, in view of all the circum-
> stances, the motorman was negligent in the management of
> the car.

Error to Washtenaw; Kinne, J. Submitted October
16, 1902. (Docket No. 71.) Decided December 2, 1902.

Case by Aretus A. Bedell, administrator of the estate
of Aretus Alfred Bedell, deceased, against the Detroit,
Ypsilanti & Ann Arbor Railway, for negligently caus-
ing the death of plaintiff's intestate. From a judgment
for plaintiff, defendant brings error. Affirmed.

*Corliss, Andrus, Leete & Joslyn*, for appellant.

*A. J. Sawyer & Son*, for appellee.

MONTGOMERY, J. This is an action for negligent
injury, and the case may be described and the law laid
down by the court understood best by an extract from the
charge of the court, as follows:

"The case here is not one arising upon a street crossing,
which has been a very fruitful source of litigation, but
the situation is one where the decedent was riding upon
his wheel in the public highway, close by the side of the
defendant's railway, and was overtaken and killed by a

car coming from behind. It is sometimes said, very correctly, that, if one discovers another to have been negligent, he must take precautions accordingly, omitting which, he is liable to the other for the damages which follow from his own want of care, for, however related the separate negligences may be, the one cannot bar an action for the other, unless it be contributory; and, though an unseen position might contribute to an accident, a discovered one cannot.

"The decedent, Mr. Bedell, was not a trespasser upon the street-car tracks, in any sense. The right of the street railway in the street is only to use it in common with the public. It has no exclusive right of travel, even upon its track, and it is bound to use the same care in preventing a collision as the driver of a wagon, or any person crossing or entering upon the railway. Street cars have precedence, necessarily, in the portion of the way designated for their use. This superior right must be exercised, however, with proper caution, and a due regard for the rights of others; and the fact that it has a prescribed route does not alter the duty of the defendant railway company to the public, who have the right to travel upon its track until they are overtaken by its cars. In this case there is no dispute but that the motorman saw the decedent, Mr. Bedell, for some time and for a considerable distance before he overtook and struck him with the car. It is undisputed that the motorman saw the decedent riding upon his wheel along a path in very close proximity to the track of the railway company. It is in dispute, however, whether the bell or gong was rung by the motorman. The motorman himself testifies that the decedent gave no indication that he heard the bell or gong of the rapidly approaching car until it was too late to escape disaster.

"Applying some of these principles to the facts in this case, I instruct you that if the decedent, Mr. Bedell, by reason of being upon his wheel, with his back to the approaching car, and apparently giving no indication of any knowledge of the warning given him by the motorman, was manifestly in a place of imminent danger when and as seen by the motorman, then it became the duty of the motorman to run his car with corresponding care, and in a manner reasonably safe under those circumstances, both as to speed and as to the control of his car; and if, under these circumstances and such duty, the motorman intentionally ran his car, or recklessly or wantonly allowed

his car to run, at what he knew was a high and dangerous rate of speed, and in reckless disregard of safety and the consequences to the decedent, although with no thought or intention to injure any one, and if, by reason of such reckless and wanton conduct on the part of the motorman, the decedent, Mr. Bedell, was struck and killed, then I think that the railway company was to blame, and the defendant is liable in this action for whatever damages plaintiff received.

"If the decedent, Mr. Bedell, was not in a place of danger, as seen by the motorman, then the defendant would not be liable. If the car was not running at a high rate of speed, which the motorman knew, and a reasonable man ought to have known, to be dangerous and improper under the circumstances, then the defendant would not be liable. If the railway company, through its servants, was not wanton or reckless under the circumstances, it is not liable. Whether or not the railway company is liable, you are to determine from the evidence. In other words, you are to determine from the evidence whether or not the plaintiff has shown, by a fair preponderance of the evidence, that under the facts and circumstances known and apparent to the motorman, and in view of the situation as it appeared to him, this car was run at a high and dangerous rate of speed, with reckless and wanton disregard of consequences, and whether or not this accident was caused thereby. If these things have not been so shown, the defendant is not liable; if they have not been established, then the defendant is not liable.

"If you find from the evidence that no bell or gong was rung or sounded, this would be an act of negligence on the part of the defendant company. If you should find from the evidence that the motorman was aware that the decedent, Mr. Bedell, was deaf, and knew that the person riding upon the wheel in front of the car was Mr. Bedell, this knowledge would impose upon the motorman the duty of greater care and caution in the movement and control and handling of his car."

These instructions embodied the law as established by previous rulings of this court. See *Montgomery* v. *Railway Co.*, 103 Mich. 60 (61 N. W. 543, 29 L. R. A. 287); *Tunison* v. *Weadock*, 130 Mich. 141 (89 N. W. 703), and cases cited. The only question which can fairly be made upon this record is whether the facts justified the submis-

sion of the question to the jury in the form adopted by the circuit judge.   It is contended by the defendant that the evidence shows that the decedent was signaled by his companions, and warned of the danger.   This is doubtless true, but it is also apparent that the decedent did not understand the signals given, and there was testimony from which the jury might have inferred that the motorman observed that these signals were not being understood or observed by decedent.

The defendant also contends that the case is one like *Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007), namely, an attempt to cross the track, unexpected and sudden.   But the present case differs from that in this: That for a considerable distance the decedent, while pursuing his way on his bicycle, ahead of and in the same direction in which the electric car was going, was near enough to the track to be in a place of danger; and this within the observation of the motorman.   There was testimony, therefore, bringing the case within the rule of the cases first above cited, and, as the only error relied upon is the refusal of the circuit judge to direct a verdict for the defendant, the judgment will be affirmed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred.