RICHMOND LOCOMOTIVE WORKS v. RAMSEY.

(Circuit Court of Appeals, Fourth Circuit. July 12, 1904.)

No. 508.

1. NEGLIGENCE—CONTRACTOR'S SERVANT—INJURIES—QUESTION FOR JURY.

Plaintiff, a negro laborer, was employed by an independent contractor to tear down a wall in defendant's locomotive works during the making of the alterations therein, for which purpose plaintiff climbed on the third round of a ladder, with the width of the wall of the erecting shop of the defendant's works between him and the rail on which a movable crane was operated. Plaintiff reached across the wall and took hold of the rail, and in this position began throwing bricks from the wall, and while so engaged the crane was moved along the rail, crushing plaintiff's hand. At the time defendant's crane operator started the same, when it was about 50 feet distant from the plaintiff's hand, he looked along the track, and saw nothing to cause him to suspect danger to plaintiff, and there was nothing in plaintiff's position to cause the operator to believe that plaintiff's hand, which was dark, was on the rail. *Held*, that such facts did not justify the submission of the case to the jury on the theory that defendant, after plaintiff had put himself in a position of danger, could, by exercise of reasonable care, have discovered the danger, and avoided the injury.

On Writ of Error to the Circuit Court of the United States for the Eastern District of Virginia.

C. V. Meredith and M. M. McGuire, for plaintiff in error.

John A. Lamb (H. A. Atkinson and R. T. Lacy, on the brief), for defendant in error.

Before GOFF, Circuit Judge, and BRAWLEY and McDOWELL, District Judges.

McDOWELL, District Judge. This was an action at law, brought by the defendant in error, who will be hereafter designated as the "plaintiff," for damages for personal injury, which resulted in a verdict and judgment in behalf of the plaintiff for $2,917.50. The Richmond Locomotive Works, to be hereafter designated as the "defendant," had some months previous to the accident to the plaintiff let to contract the work of tearing down certain parts of its building and erecting others in lieu thereof. The contractor sublet a part of the work to one Wilson, by whom the plaintiff was employed at the time of the accident. Wilson's men had been at work for some weeks, and the plaintiff, who had also been on the work previously, had been engaged for about a week prior to the accident. The work at which the plaintiff was engaged was in tearing down a brick wall of the old boiler house, which ran at right angles to the erecting shop. The drawing opposite shows the partially demolished brick wall which the plaintiff was tearing down, the ladder on which he was standing at the time, which is leaning against the western wall of the erecting shop, and one of the rails on which ran a crane, which was constantly used in the erecting shop. The crane tracks were about 600 feet in length, and some 39 feet apart. The man who operated the crane was in a cage suspended under the bridge or axle of the crane, on the far side of the erecting shop, and nearly under the more distant rail, with his head about 18 inches beneath the level of the rails. The crane was used for hoisting and carrying heavy machinery and materials from place to place in the erecting room.

On the morning of the accident, Cole, foreman of Wilson, the subcontractor, directed the plaintiff, a negro laborer 23 years old, to go up on the ladder and throw off the bricks composing the boiler house wall to be removed. The plaintiff ascended the ladder until he stood on the third round from the top. He then turned so that his face was towards his work, put his left hand over the crane rail, and, stooping forward and towards his right, commenced to pull out and throw down the bricks with his right hand. While he was in this position, the crane, which was moved slowly from the south (right side of drawing), ran over the plaintiff's hand, and injured it and his forearm to such an extent that the arm had to be amputated. The crane operator did not know of the plaintiff's position until after the injury. The plaintiff knew that the crane was frequently and almost constantly moved up and down the erecting room.

There is a conflict of testimony as to whether the ladder was put in the position shown in the drawing by the plaintiff under Cole's direction, or whether it had for some days been standing as shown. There

CERTIFIED TO BE AN ISOMETRIC PROJECTION OF THE MODEL SCALE ¼ = 1'

was some testimony for the plaintiff to the effect that Cole, when direct-ing the plaintiff to tear down the wall, told him that the crane would not be operated. This is denied by Cole. There is no evidence that Cole, if he made this statement, had been authorized to make it by any person representing the defendant, or that this statement, if made, was heard by any one representing the defendant. The contract made by the defendant with the contractor provided that the contractor's work should be so carried on as not to interrupt the work of the defendant. And the defendant's work in the erecting shop was being carried on at

the time of the injury. So far as appears, no employé of the defendant knew of the plaintiff's position of danger. The crane operator had been engaged by the defendant for about ten years, and for three years prior to the accident he had been operating the crane. It was affirmatively shown that he was competent and careful, and that, if there was any cause of complaint against him, it was that he was wont to move the crane too slowly because of his unusual caution. His testimony, which is wholly uncontradicted, is that he looked down the tracks before starting the crane—which had been for some moments standing some 30 feet south of the place of the accident—and saw nothing to indicate that any one was in danger.

Had the learned trial court taken the view of this case that we feel constrained to take, the jury would have been directed to find for the defendant, and we think the court erred in not giving such' instruction. In other respects we find the charge given the jury erroneous, in that it was based on the theory that the defendant, after the plaintiff had put himself in a position of danger, could, by the exercise of reasonable care, have discovered his danger and avoided the injury. But to us, even without considering the fact that the plaintiff's negligence continued until the moment of the injury (Gilbert v. Erie R. Co., 97 Fed. 747, 38 C. C. A. 408; Kirtley v. Chicago R. Co. [C. C.] 65 Fed. 386; St. Louis R. Co. v. Shumacher, 152 U. S. 77, 81, 14 Sup. Ct. 479, 38 L. Ed. 361; Rider v. Syracuse R. Co. [N. Y.] 63 N. E. 836, 58 L. R. A. 125; Fonda v. St. Paul R. Co., 71 Minn. 438, 74 N. W. 166, 70 Am. St. Rep. 341; Montgomery v. Lansing R. Co., 103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287), it seems that there was no evidence making this rule applicable. The plaintiff had unnecessarily taken an unusual and extraordinary position. He was standing on the third round of the ladder, with the width of the wall of the erecting shop between him and the rail, leaning towards the partially demolished wall of the boiler house. There was nothing in his position, as viewed from the situation of the crane operator, which would have suggested to the latter that the plaintiff had his hand on the rail. The erecting shop was under roof, and it appears that it was rather dark. The plaintiff is a negro, and his hand therefore would not have attracted the attention of the crane operator. According to his uncontradicted testimony, the crane operator looked along the tracks before starting the crane, and saw nothing to cause him to suspect the danger of the plaintiff. The crane operator was, when he started the crane, about 50 feet distant from the plaintiff's hand. At the very moment of the accident he was nearly 40 feet distant, with his head some 18 inches below the level of the rail. In looking down the tracks to see if the way was clear, if he had seen the plaintiff's head, or his head and shoulders, he would not have been led to suspect that the plaintiff had his hand in the extraordinary position in which he did have it. The back of the plaintiff's head was toward the crane operator. Under these circumstances negligence could not be imputed to the defendant. There was, therefore, no room for the application of the rule of law on which was based the charge to the jury. It follows that it is unnecessary to consider the other assignments of error.

We are of opinion to reverse the judgment below, and remand this cause for proceedings consistent with this opinion. Reversed.