SPIES v. LOCKWOOD et al.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. PLEADING—AMENDMENT DURING TRIAL—NEW CAUSE OF ACTION.
Code Civ. Proc. § 723, authorizing amendments during the trial where the amendment does not change substantially the claim or defense, does not authorize the amendment, during the trial, of a complaint to cancel a mortgage for fraud and want of consideration, by asking for its cancellation because it was given as indemnity for a guaranty of a debt which had since been satisfied, the two being different causes of action.

2. SAME—AMENDMENT TO CONFORM TO PROOF.
Though it appeared, without objection, on the trial of an issue whether a mortgage had been procured by fraud and was without consideration, that it had been given to indemnify a guaranty, and that the debt had been paid, the referee had no power to permit an amendment by asking for the cancellation of the mortgage because of its payment, since the evidence was competent on the issue being tried, and hence there was not a litigating, by consent, of the question of payment.

3. SAME—COMPLAINT TO CANCEL MORTGAGE—ISSUES.
Amending a complaint to cancel a mortgage for fraud and want of consideration, by alleging that at the time of its execution the mortgagor and mortgagee both believed that the beneficiaries of the mortgage were indebted on a certain guaranty, as indemnity for which the mortgage was given, but that in fact they were not so indebted, raises no issue as to the payment of the mortgage after it became a valid obligation.

McLaughlin, J., dissenting.

Appeal from judgment on report of referee.

Action by Amelia L. Spies against Edgar Lockwood, as trustee, and others. There was a judgment for plaintiff, and defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

George A. Strong, for appellants.

James Harold Warner, for respondent.

RUMSEY, J. The second amended complaint in this action, upon which was joined the issue to be determined by the referee, alleged, in substance, that upon the 26th of October, 1893, the plaintiff signed two written instruments, one purporting to be a bond to Edgar Lockwood, one of the defendants, as trustee, conditioned for the payment by her of $7,500, and the other a mortgage to secure the bond; that the mortgage was recorded in the office of the register of deeds, and appears to be a valid instrument, and creates a cloud on the title of certain premises in the city of New York owned by her. The complaint then contains allegations that each of said instruments was without any consideration; that at the time of signing them the plaintiff did not know their contents, but believed that they were something else than what they in fact were; that she did not know the legal effect of them; and that her ignorance of the contents of the instruments and their legal effect was caused by false representations made to her, with intent to deceive her, and that she believed the representations. The complaint further goes on to state that from the 21st of June, 1893, and until after the signing of the papers referred to, the plaintiff was sick and suffering from nervous prostration; that she was taking anæsthetics under a physician's advice; that she never had any knowledge of legal or business matters; and that she was in such a nervous mental condition as to be unable to control her thoughts or to comprehend the consequences of her acts, and that her mind was not in a condition to consent to the terms of the contract. She alleges also that before the beginning of the action she demanded of the trustee to whom the instruments were given to deliver them up, but that he refused to do so. The relief she demands is that the instruments be canceled, satisfied, and discharged of record.

The answer puts in issue the validity of the bond and mortgage, and insists that each of them is a valid instrument, executed by the plaintiff in the full possession of her faculties, with full knowledge of the contents of each, for a valuable consideration, and that they are valid obligations in the hands of the persons to whom they were made and who then held them. Upon the issue framed by this answer, the cause was referred to a referee to hear and determine. A very considerable amount of testimony was taken before the referee, and at some time in the course of the trial a stipulation of facts was produced by the defendant's counsel and put in evidence. That stipulation contained, in addition to a large number of facts bearing upon the question of the original consideration of the mortgage, the agreement that the second amended complaint, upon which issue had been joined, should be deemed amended so as to contain an allegation to the effect that; when the plaintiff signed the alleged bond and mortgage, the plaintiff and Edgar Lockwood (who, as trustee for other persons, was named as the party of the second part in the bond and mortgage)

both believed that the firm of Waydell & Co. were indebted to the persons for whose benefit the bond and mortgage were given, but that in fact they were not "at the time the said alleged bond and mortgage was signed as aforesaid, nor at any other time," indebted in any sum whatever to those persons or any of them in any manner. With this stipulation in the case, the parties proceeded to examine fully into the consideration of the bond and mortgage. It appeared that the plaintiff's husband had purchased, from the persons for whose benefit this mortgage was given, letters of credit to a large amount, and that the firm of Waydell & Co. had guarantied the payment by the plaintiff's husband of the amounts drawn on these letters of credit. After a large amount had been drawn upon them, the plaintiff's husband died, leaving his affairs in a very unsettled condition, and Waydell & Co. were in a fair way to be financially ruined because of the necessity of meeting the claims of the persons who had issued the letters of credit for the money paid on account of them. The plaintiff was the owner of valuable real estate in the city of New York in her own right, and, to enable Waydell & Co. to meet the liability incurred by their guarantying the credit of her husband, she executed the bond and mortgage in suit and another one. The allegation that the bond and mortgage were issued without consideration made it necessary, of course, to ascertain what, if anything, was due upon the letters of credit for which Waydell & Co. were guarantors. The stipulation in question stated many facts bearing upon the amount of indebtedness arising from this letter of credit, and that stipulation, with much other testimony, was given upon the trial, tending to show what, if any, amount was due upon those letters of credit at the time the mortgage was given by the plaintiff, and in the course of that testimony the plaintiff claimed that it appeared that, for a large portion of these alleged debts, neither her husband nor the firm of Waydell & Co. were liable, and that in fact, if the amount for which they were not liable was deducted, as she claimed it ought to have been, from the amount apparently due by Waydell & Co., the remainder would be considerably less than the payments which had been actually made upon account of that debt, for which the mortgage was security. After the testimony upon this question of consideration had all been received, and the evidence had been closed, an application was made by the plaintiff to amend the complaint to conform to the facts proved, by inserting substantially an allegation that:

"At the time when the plaintiff promised to pay $7,500 to the defendant Edgar Lockwood, the plaintiff and Edgar Lockwood intended that said promise be a promise to pay $7,500, part of any debt which John H. Waydell, Anderson Waydell, and Frederic Waydell, a partnership doing business under the firm name of Waydell & Co., owed the other defendants; and plaintiff further alleges that on November 11, 1893, any debt which said Waydell & Co. owed said other defendants was paid in full, and that the answer to the second amended complaint herein be deemed amended so as to deny each and every of the aforesaid allegations, or in such other form as defendants may be advised."

This was strenuously opposed by defendants' counsel, but, after a full hearing, the learned referee concluded that the amendment was one which he was authorized to make, and allowed it. To this ruling

57 N.Y.S.—65

the defendants' counsel excepted, and the question raised by this exception is the first one that confronts us upon the argument of this appeal.

It is claimed on the part of the defendants that the amendment not only changes substantially the claim of the plaintiff, but constitutes in fact a new cause of action, and therefore it was beyond the power of the referee to permit it to be inserted in the complaint at the trial. The power of the referee arises from section 723 of the Code of Civil Procedure, which provides that the court may, upon the trial, in furtherance of justice, amend any pleading by inserting an allegation material to the case, or, where the amendment does not change substantially the claim or defense, by conforming the pleading to the facts proved. A referee to whom a case has been referred to hear and determine has, in this matter, the same power as a court before which a trial is pending. Both court and referee derive their power purely from the provisions of this section, and, while the power is undoubtedly to be exercised with considerable freedom within its limits, yet its extent is quite strictly limited, as will be noticed by a reading of the section, and the referee has no power to allow any amendment which goes beyond the strict limitations of the statute in that regard. These limitations are that the amendment to be alleged must not change substantially the claim or defense. When the power of the referee to grant such an amendment is challenged, it is not necessary for the challenger to show that the amendment operates to set up a new cause of action, but he makes out his case to prevent it, if he makes it appear that the amendment changes substantially the claim made by the plaintiff. It is not necessary to examine into the reasons of this limitation of the power of the referee. It is sufficient to say that they are plainly established by the law, and the only question, in any case, is whether the amendment allowed is broader than the statute permits.

This action was brought to procure a cancellation of the bond and mortgage, and that it should be discharged of record. The action, as brought, proceeded upon the theory that the mortgage was never a valid instrument, but that it was made without consideration; that the plaintiff was procured by fraud to sign it, at a time when, because of her mental condition, she was peculiarly susceptible to be influenced by any one in whom she had confidence. The gravamen of this action is that the mortgage never had any existence as a valid instrument. Whatever may have occurred after the mortgage had been given was of no importance except as it bore upon the question whether in fact the mortgage, when signed by the plaintiff, became valid. The plaintiff was bound to stand or fall by the proposition that, as a matter of law, the mortgage never took effect as a valid instrument. The amendment which was allowed by the referee was a serious change in the position of the plaintiff. So far from insisting that the mortgage was never a valid mortgage, this amendment practically conceded its validity, and asserted a claim to have it satisfied of record, for the reason that, being a valid instrument, its obligations had been satisfied, so that it no longer was operative. The relief which she would have been entitled to, under that state of facts, was not to have the

instrument canceled and vacated as invalid, but to have put upon the record a statement that the mortgage had been satisfied and discharged. Her right to have that relief arose, under this amendment, purely and only by what occurred after the mortgage was made. Anything that had been done by way of inducing her to make the mortgage was of no sort of importance as to her rights under the amendment, except so far as it might bear upon the amount which she could be called upon to pay before she could have the mortgage satisfied. The two rights were entirely different, therefore, and arose out of entirely different conditions; and while, because they both sought substantially the same end, they were not necessarily inconsistent in that regard, yet the end which they sought was to be reached by entirely different roads, over different ground. The two claims proceeded upon inconsistent and contradictory theories. If the plaintiff had tried the action upon the pleadings as they were framed at the time the order of reference was made, she would have stood upon the theory that the mortgage was never a valid instrument. If she had been defeated in that action, nothing in the judgment would have operated as a bar to an action to compel the discharge of the mortgage, for the reason that it had actually been paid, and she might, as soon as the first judgment against her had been entered, bring another action for the discharge of the mortgage based upon the facts set up in the amendment. It is quite clear, for this reason, that not only did the amendment change substantially the claim of the plaintiff, but that it inserted a new cause of action. Therefore it was beyond the power of the referee to permit the amendment.

But it is said that the evidence was already in without objection, and for that reason it was proper that the complaint should be amended to conform to the facts which each side was willing to put into the case. It is quite probable that, if the parties had consented to litigate before the referee the question whether this mortgage had been paid, there would have been no objection, at the close of the case, to his amending the complaint to introduce allegations which each party had permitted to be litigated upon the trial. But that condition of affairs did not exist here. It is quite true that the parties went into the consideration of this mortgage, but it was solely upon the issue tendered by the pleadings, that the mortgage was executed originally without consideration. Every particle of testimony which was admitted upon the question of the amount of the debts was competent and material upon that question. The defendants could not have successfully interposed an objection to any of that testimony. They were not estopped, therefore, from insisting that the testimony which was material upon the issues framed by the pleadings should not be used as a reason for requiring them to litigate another question, which was not presented in the pleadings, and which clearly was not within their purview, at the time the action was referred to the referee.

It is said that the amendment contained in the stipulation, to the effect that Waydell & Co. were not, at the time of the giving of the bond and mortgage, or at any other time, indebted to the bankers, is broad enough to permit the plaintiff to raise the question that the mortgage was afterwards paid. With that contention we do not

agree. The amendment spoken of has in view only the consideration for which the mortgage was given, a matter already presented by the pleadings, and simply amplified by the amendment, and the question of indebtedness in that amendment clearly applied to such indebtedness as would afford a sufficient consideration for the mortgage, and nothing further. It does not warrant any claim that the mortgage, having a sufficient consideration, was paid after it had become a valid and effectual security, because the whole theory of the complaint was that it never took effect as such. We are constrained, therefore, to differ with the learned referee as to the power to allow the amendment, and, as a result, we must reverse this judgment, and order a new trial before another referee, with costs to the appellants to abide the event of the action. All concur, except McLAUGHLIN, J., dissenting.

McLAUGHLIN, J. (dissenting). It is proposed to reverse this judgment solely upon the ground that the referee did not have the power to permit the complaint to be amended so as to conform it to the facts proved, by inserting therein an allegation that:

"At the time when the plaintiff promised to pay $7,500 to the defendant Edgar Lockwood, the plaintiff and Edgar Lockwood intended that said promise be a promise to pay $7,500, part of any debt which John H. Waydell, Anderson Waydell, and Frederic Waydell, a partnership doing business under the firm name of Waydell & Co., owed the other defendants; and plaintiff further alleges that on November 11, 1893, any debt which said Waydell & Co. owed said other defendants was paid in full, and that the answer to the second amended complaint herein be deemed amended so as to deny each and every of the aforesaid allegations, or in such other form as defendants may be advised."

The complaint, before the amendment was allowed, alleged:

"That, at the time when the plaintiff herein signed the alleged bond and mortgage herein, the plaintiff herein and the said Edgar Lockwood both believed that said Waydell & Co. were indebted in a sum of money to the said Munroe & Co., Kleinwort Sons & Co., and the Canadian Bank of Commerce, as guarantors of letters of credit issued by the said Munroe & Co., Kleinwort Sons & Co., and the Canadian Bank of Commerce to Marcial & Co.; and that the said Waydell & Co. were not, at the time the said alleged bond and mortgage was signed as aforesaid, nor at any other time, indebted in any sum whatever to the said Munroe & Co., Kleinwort Sons & Co., and Canadian Bank of Commerce, or any or either of them, as guarantors or otherwise, of the said letters of credit, or any or either of them, or in any other manner; that the said Waydell & Co. have never been indebted to either Munroe & Co.. Kleinwort Sons & Co., or the Canadian Bank of Commerce, in any sum or amount of money whatever."

The action was brought to procure the cancellation of a bond and mortgage. The judgment prayed for was that the bond and mortgage be canceled, and that Lockwood, as trustee, be directed to execute and deliver to the plaintiff an instrument satisfying and discharging the same of record. Upon the trial it appeared, from evidence introduced by the defendants, that, when the instruments were given, Waydell & Co. were indebted in the sum of $7,500 to the parties for whose benefit they were given; but this evidence, according to the findings of the referee, also established that after the bond and mortgage were given, and before the commencement of this action, this indebtedness had in fact been fully paid. If

the referee was right in his conclusion, then the plaintiff, in equity, was entitled to have the instruments satisfied of record. The evidence establishing the payment having been introduced by the defendants themselves, I do not think they are in a position to complain because the referee permitted the complaint to be amended to conform it to the facts proved, especially in view of the fact that, after the amendment had been made, they were afforded an opportunity to introduce further evidence, if they so desired, which might tend to explain, modify, or destroy the evidence theretofore given by them on the subject of payment. The Code of Civil Procedure requires that the allegations of a pleading must be liberally construed, with a view of substantial justice between the parties (section 519); and if necessary, in furtherance of justice, the court (and it is conceded in the prevailing opinion that the referee had the same power) may, upon the trial or at any other stage of the action, amend a pleading by inserting therein an allegation material to the case, or, where the amendment does not change substantially the claim or defense, by conforming the pleadings to the facts proved (section 723). The issue, both before and after the amendment, was substantially the same. It was whether the bond and mortgage were valid and subsisting obligations. The plaintiff asserted that they were not, because, when given, Waydell & Co. were not then, or at any time thereafter, indebted to the defendants. The defendants asserted that they were, and they established the indebtedness when the bond and mortgage were given, but in doing that they also established that it thereafter, and prior to the commencement of the action, had been paid. When the indebtedness was extinguished, the purpose for which the bond and mortgage were given had been accomplished, and they then ceased to be binding obligations, and the plaintiff was legally entitled to have them given up and canceled. The evidence to establish the payment, as I have said, was introduced by the defendants. They therefore could not have been misled or surprised by it.

For these reasons I am unable to concur in the opinion of RUMSEY, J.