WILLIAM A. WILLIAMSON, Respondent, *v.* ATLAS POWDER COMPANY, Appellant.

First Department, February 20, 1925.

**Brokers — action by merchandise broker to recover commissions — plaintiff sued on contract — original sale was abandoned — new sale contract, which was not procured by plaintiff, was made — recovery cannot be had on new sale contract on theory that plaintiff was to have commissions thereon in consideration of waiver of rights under original contract — evidence — error to exclude evidence by defendant as to how subsequent contract was secured.**

A merchandise broker cannot recover commissions for the sale of goods on the theory that he was to have commissions on a particular contract with reference to which he was not the producing cause as consideration for his waiving his rights under the original contract between the parties, where it appears that the original contract was abandoned and a new sale contract was entered into, which the plaintiff did not procure, and that the complaint alleges that the defendant agreed to pay commissions on the contract and that the plaintiff was the procuring cause of the sale.

The cause of action alleged in the complaint on a contract for straight commissions cannot be sustained by proof of a contract that the plaintiff was to receive compensation for waiving his rights under the original contract.

It was error to exclude evidence offered by the defendant for the purpose of showing how the subsequent contract, in relation to which the plaintiff demanded a commission, was actually secured.

MERRELL and FINCH, JJ., dissent, with opinion.

APPEAL by the defendant, Atlas Powder Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of May, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*James E. Duross*, for the appellant.

*William H. Clark*, for the respondent.

MARTIN, J.:

The plaintiff, a broker, made a sale in the year 1916 for the defendant corporation of 525 tons of mixed acid to Marden, Orth & Hastings; deliveries to be made over a period of one year ending

in January, 1917. Marden, Orth & Hastings accepted a portion only of the deliveries contemplated. In January, 1917, Mr. Backus, general sales agent of the defendant, called upon the plaintiff and discussed an adjustment of the liability under the contract with Marden, Orth & Hastings.

At the suggestion of plaintiff a conference was held with Mr. Orth, one of the buyers, at which it was proposed that the buyers pay damages for the failure to complete the contract or make a new contract to take a quantity of more than 525 tons and also buy from defendant such carload quantities as Marden, Orth & Hastings might require until they were able to make a new contract, subject to the qualification of defendant's price being as low as others. On December 12, 1917, the Atlas Powder Company entered into a contract with Marden, Orth & Hastings for 4,000,000 pounds of mixed acid, which were all delivered and paid for.

Plaintiff has sued for a commission on this contract. He alleges:

" That between the month of May, 1916, and the month of December, 1917, at the said City of New York aforesaid, the plaintiff rendered services for the defendant, at its special instance and request, as a broker, in the sale for the defendant of certain goods, wares and merchandise consisting of mixed acid.

" That the defendant agreed to pay to the plaintiff for his services in procuring a purchaser for, or effecting a sale of said goods, wares and merchandise, a sum equal to one per cent of the total prices agreed to be paid therefor by the purchaser thereof. That pursuant to said agreement, the plaintiff sold for the defendant 4,000,000 pounds of said goods, wares and merchandise at agreed prices amounting in the aggregate to the sum of $267,000."

On the argument counsel for plaintiff admitted that his client was not the direct producing cause of the contract for the 4,000,000 pounds. He attempted to prove at the trial another agreement by the terms of which he was to be compensated for the commission, which he lost as a result of the cancellation, by being given commissions on new contracts.

The plaintiff testified with reference to the arrangement: " Mr. Backus brought up the fact in this conference that they were obligated to me for a commission and I stated that I would take my commission out of this next contract." Also that: " Mr. Backus brought up the fact to Mr. Orth that they were obligated for a commission on this contract, that they had delivered only a car or two on, and I said: ' Well, I will let my commission go on this new contract; I will waive my commission on the old contract and I will take my commission on the new one.' Backus said: ' All right.' "

On cross-examination plaintiff testified: " Q. Do you claim that you did anything other than what you have testified to, to effect the sale of 4,000,000 pounds? A. I do not. Q. So that you have given now all the testimony there is regarding any services you rendered to effect this sale of 4,000,000 pounds? A. Yes." And again he testified: " Q. You did not take any part in the making of that particular contract? A. I have so testified. Q. And what part, if any, did you take in the immediate negotiations that resulted in that contract? A. None whatever."

In his complaint the plaintiff alleges a cause of action for commissions, to the extent of averring that he fully performed the contract and completed the sale by which he earned this commission. Upon the trial no attempt was made to show that he was the producing cause of the sale.

It is argued by plaintiff that he is entitled to the commission because of defendant's alleged undertaking in consideration for plaintiff's consent to surrender a right to brokerage on the first sale. This refers to a contract entirely different from that set forth in the complaint. Plaintiff pleads on the basis of a straight commission. He seeks to recover on an alleged contract by which he was to receive compensation for giving up any right he might have had to commissions. Even assuming that he was to receive in lieu of the brokerage an amount equal thereto, the contract on which recovery is predicated was not pleaded.

Timely objection was taken to the admission of evidence upon the ground that the contract sought to be proved was not that pleaded.

Under the circumstances, the defendant was entitled to a dismissal of the complaint because of failure of proof.

In *Walrath* v. *Hanover Fire Ins. Co.* (216 N. Y. 220, 225) the court said: " It is fundamental that in civil actions the plaintiff must recover upon the facts stated in his complaint, or not at all. In case a complaint proceeds on a definite, clear and certain theory, it will not support or permit of another theory because it contains isolated or subsidiary statements consistent therewith. A party must recover not only according to his proofs but according to his pleadings. (*Northam* v. *Dutchess Co. Mut. Ins. Co.*, 177 N. Y. 73; *Canton Brick Co.* v. *Howlett*, 169 N. Y. 293; *Brightson* v. *Claflin Co.*, 180 N. Y. 76; *Southwick* v. *First Nat. Bank of Memphis*, 84 N. Y. 420.)

" At the close of the entire evidence the court permitted the plaintiff, under the proper objection and exception of the defendant, to insert in the complaint, as an amendment, allegations to the effect that the defendant agreed to deliver the policy of insurance

and had failed and neglected to perform that agreement. The defendant, as we have stated, objected throughout the trial to the admissibility of the evidence in proof that the defendant made a parol agreement to insure the plaintiff and violated it. The complaint could be amended only at a time which would give the defendant a right and opportunity to meet by proof the allegations made against it. (*Romeyn* v. *Sickles*, 108 N. Y. 650; *Lamphere* v. *Lang*, 213 N. Y. 585; *Audley* v. *Townsend*, 126 App. Div. 431.) Moreover, it was error to permit at the trial an amendment which changed substantially the claim made in the complaint. (*Dexter* v. *Ivins*, 133 N. Y. 551; *Spies* v. *Lockwood*, 40 App. Div. 296; Code of Civil Procedure, § 723.)" (See, also, *Blackwell* v. *Glidden Co.*, 208 App. Div. 317.)

We deem it expedient to advert to an error in excluding evidence offered by the defendant for the purpose of showing how the subsequent contract, in relation to which the plaintiff demanded a commission, was actually secured. The court ruled that the evidence was inadmissible because plaintiff conceded he was not directly responsible for obtaining the contract, disregarding the fact that the defendant had not conceded the truth of plaintiff's testimony or that conversations to which he testified had taken place.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., and MCAVOY, J., concur; MERRELL and FINCH, JJ., dissent.

MERRELL, J. (dissenting):

The action is brought to recover a commission on the sale of 4,000,000 pounds of mixed acid which the plaintiff claims to have brought about as the broker of the defendant. The complaint alleges that the defendant is a foreign corporation; that between the month of May, 1916, and the month of December, 1917, at the city of New York, the plaintiff rendered services for the defendant at its special instance and request as a broker in the sale for the defendant of certain goods, wares and merchandise consisting of mixed acid; that the defendant agreed to pay the plaintiff for his services a sum equal to one per cent of the total prices agreed to be paid therefor by the purchaser; that pursuant to said agreement plaintiff sold for the defendant 4,000,000 pounds of said goods at the agreed price of $267,000. The complaint demands judgment in the sum of $2,670, with interest. The jury found in favor of the plaintiff for the full amount.

The appellant contends that the evidence does not show that the

plaintiff brought about the sale of the 4,000,000 pounds of mixed acid in question. On the other hand, the plaintiff asserts and I think the evidence shows that he was the producing cause of the sale of the acid. The contract under which the aforesaid acid was actually delivered bears date December 12, 1917. Plaintiff admits that he did not directly negotiate the contract in question, but claims that it was made through his efforts and as the result of his bringing the parties together. The evidence upon this subject is as follows: In May, 1916, the plaintiff, as the broker of the defendant, negotiated a contract with Marden, Orth & Hastings Corporation for the purchase of 525 tons of mixed acid. The contract describes the nature of the commodity, the time of delivery, price to be paid, and contains a provision that the seller shall have the right at its option to cancel the contract in case the buyer fails to order and take the monthly quantities provided for. The contract also contains a provision to the effect that the contract is made subject to " suspension " in case of fire, flood, strikes or unavoidable accident to the machinery or works of the producers or receivers or of any interference by reason of which either party is prevented from producing, delivering or receiving goods. This clause of the contract further provides that in such event the delivery suspended is to be canceled from the contract. It is apparent that the contract could not be canceled at the caprice or will of the parties and did not amount to an option contract as argued at the trial by the defendant's attorney. The evidence shows that the defendant considered the contract binding, and that the buyer made no claim that it was not binding and in fact admitted its liability thereunder. It is claimed that small deliveries were made under this contract of May, 1916, and that the plaintiff received his commission thereon. There is no dispute in respect to the fact that the plaintiff did receive commissions on such part of the mixed acid as was delivered under the May, 1916, contract.

Mountford S. Orth, who represented the buyer at several conferences and was an officer thereof, testified in behalf of the plaintiff upon the trial that he considered the buyer bound by the contract and that the buyer had not taken the quantities of mixed acid ordered for the reason that his plant was not ready, but that the buyer stood ready at all times to respond in damages to the seller and did not wish to see the seller lose anything by reason of the default of the buyer. This fact is very important as bearing upon the right of the plaintiff to commissions on the large contract thereafter taken and which forms the basis for the commissions claimed by the plaintiff.

The plaintiff testifies that in December, 1916, a Mr. Backus,

who represented the defendant in the sales department, called upon him at his office in the city of New York; that Backus said that the defendant was facing a heavy loss by reason of the purchaser's default under the contract, and its failure to take the mixed acid for the reason that the market had gone down. Williamson suggested that he and Backus have a conference with Marden, Orth & Hastings Corporation, which was agreed upon. Backus and Williamson went over to the office of the purchasers, at 61 Broadway, and saw Mr. Orth. Backus stated his case and said that they were prepared to deliver the acid; that the market had gone down, and that the defendant was " facing a very substantial loss." Orth said that it was too bad that their plant was not ready and they had not been able to take the acid. Williamson also testified that Orth said that they had not been permitted by the defendant to sell the acid and Williamson's statement in this regard is confirmed by a similar statement made by Orth on the witness stand. Williamson testified that it was suggested that the contract of May, 1916, be canceled and that Marden, Orth & Hastings Corporation thereafter purchase substantial amounts of acid from the defendant. Williamson testified that his commissions were also spoken about and that Mr. Backus himself brought up the question and stated that the defendant was obligated to the plaintiff for commissions, and that the plaintiff said that he would take his commissions out of the next contract.

Williamson is corroborated in this regard by the testimony of Orth, and Orth is certainly a disinterested party. During the conference, which was on January 19, 1917, the plaintiff himself dictated a letter to the defendant, which was signed by Marden, Orth & Hastings Corporation, and the defendant replied thereto on January 23, 1917. These two letters show that it undoubtedly was the understanding that the contract of May, 1916, should stand over; that the defendant should have a very large amount of the business of Marden, Orth & Hastings Corporation at a profit. Orth, corroborating plaintiff's evidence, testified that the conference was had at the time and place stated by Williamson; that the purchaser admitted that they had not been able to take the acid; that Orth told Backus " that we would take the acid when we could and take it at the price in the contract when we could, but we would, if we needed a different quality of acid, pay an appropriate price to make up the amount that the market had declined   *   *   *.  We expected to need a good deal, because we had quite a substantial plant, and make it up that way. In other words, we were willing to carry out our contracts, so that Mr. Backus' company would not have any loss. *And also the question*

of the commission to Mr. Williamson was discussed very pleasantly, and we agreed to take acids, so that he would also have his commission on that." Orth then testified that the parties talked about a new contract as follows: " The way that was talked was that we would order acid; we would give them orders for acids, as we needed it, of whatever quality we needed, if they could deliver that quality, and then we were in a position at the plant, to know how we were going to run, we would make a contract for a substantial amount." (Italics are the writer's.)

Orth then testified that " a year later we made a substantial contract." Orth then stated why the quality of the acid mentioned in the contract when made was slightly different from that in the contract of May, 1916. Orth testified that the parties at the conference discussed the plan as to the needs of the purchaser; that in view of the cancellation of the May contract the purchaser would favor the defendant " with our business any substantial amount; " that the purchaser was under an obligation to take the acid and had not taken it; that this company would have paid Mr. Backus for any damages for his loss " or compensated him in some other way; " that the defendant was to be " more than indemnified, that is, indemnified to more quantity than the 525 tons, because he had a loss there of about a cent a pound, and I offered to pay him a cent a pound additional price, more than the market price, for 525 tons, and the 525 tons to be taken, but instead of that we agreed between us that Marden, Orth & Hastings Corporation buy a substantial quantity of acid, which was more than 525 tons. * * * " The court then asked the following question: "And incidentally, to that amount, Williamson was to be allowed his one per cent commission? The Witness: Exactly. The Court: Upon such sales? The Witness: Exactly. The commission was discussed at the same time. The Court: But it was not understood clearly how much or how large the orders or order was going to be? The Witness: No. It was not definitely discussed as to the quantity it would take, nor as to the quality we would take, * * * but the result of the conference was that we would take a larger quantity than the previous contract, at the market price, whenever we took it, so as to compensate the Atlas Company for having granted us the cancellation of the contract that we had not taken."

Orth testified that it was also arranged that his company would take such special supplies as needed. It thus appears from the testimony of the plaintiff, fully supported by the testimony of Orth, who, as between the plaintiff and the defendant, was an entirely disinterested witness, that the May, 1916, contract, only a small part of which had been performed, was to be set aside upon

the express understanding that a new and larger contract was to be entered into in the near future, and that the plaintiff was to be allowed his commission on the deliveries under the contemplated contract. Can it be claimed under such evidence that the contract thereafter entered into for the 4,000,000 pounds of mixed acid was not fairly contemplated by the parties at such conference? I think not. It was expressly agreed at the meeting of plaintiff, and Orth, representing the purchasers, and Backus, representing the defendant, that the plaintiff should have his commission on the acids embraced in the new contract which was to be made to take the place of that of May, 1916. At least, both the plaintiff and Orth so testified.

It is true, the defendant's witness Backus denied that anything was said at the conference in regard to commissions. Thus, upon this feature of the case, of the utmost probative value in support of plaintiff's claim herein, if plaintiff and Orth were to be believed, the testimony presented a sharp dispute which was for the jury to determine and upon which the verdict in plaintiff's favor was decisive.

It is the plaintiff's theory of the case that, having brought the parties together in regard to the May, 1916, contract, and having also brought the parties together in regard to the adjustment of the difficulties between them growing out of the purchaser's default, he is entitled to commissions on the large contract which he says was the direct result of his efforts. The evidence presented a question of fact. The testimony of plaintiff and of Orth clearly shows that the subsequent orders were the result of the conference which the plaintiff attended, participated in and in connection with which he wrote the letter for the buyer to the defendant. If the contract was the result of the plaintiff's efforts and if the plaintiff did bring the parties together, as he claims, he is entitled to recover, even though he did not directly participate in the final making of the contract. (*Lloyd* v. *Matthews*, 51 N. Y. 124; *Travis* v. *Bowron*, 138 App. Div. 554.) It was a question of fact for the jury whether plaintiff was the procuring cause of the new contract. (*Travis* v. *Bowron, supra.*)

The appellant claims that the plaintiff has recovered on an agreement not pleaded. It seems to me that the complaint is entirely sufficient and mentioned no sale except the one relied upon at the trial. The contract of May, 1916, is within the period stated in the complaint, and the whole transaction, except the closing of the contract, is within the time stated therein.

The appellant also claims to be entitled to a reversal of the judgment on certain exceptions taken, the main one being that the court refused to charge the jury that if the jury should find

that the plaintiff, during 1917, abandoned his efforts to effect sales of the mixed acid for defendant to Marden, Orth & Hastings Corporation and thereafter the defendant in good faith itself negotiated the 4,000,000 pound contract without assistance from the plaintiff, they should find for defendant. It seems to me that the court covered the subject in his main charge, and that the jury clearly understood that the plaintiff could not recover unless he showed by a fair preponderance of the evidence that he was the party who brought about the making of the contract in question. It is quite evident that the arrangement which resulted in the making of the 4,000,000 pound contract had been practically consummated while plaintiff was present, the amount and quality thereof only to be thereafter determined. The purchaser had a very large business which the defendant wished to get, and it is quite clear that the defendant was willing to leave the matter of quantity and quality open pending orders and contracts thereafter to be given and made.

The judgment and order appealed from should be affirmed, with costs.

FINCH, J., concurs.

Judgment and order reversed, with costs, and the complaint dismissed, with costs.