[Sac. No. 3696. In Bank.—January 31, 1928.]

HENRY ALAN MARTIN (a Minor), by P. R. MERRILL, as Guardian, etc., Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, Carr & Kennedy and Charles E. Finney for Appellant.

Jesse W. Carter and Carter & Smith for Respondent.

PRESTON, J.—This is an action for damages for personal injuries sustained by plaintiff, a minor, when between eight and nine years of age. He had judgment for twenty-five thousand dollars and defendant has appealed.

On December 24, 1922, at Cottonwood, Shasta County, plaintiff was injured by coming in contact with a highly charged power line owned, maintained, and operated by defendant in serving a near-by pumping plant with electric energy. A wire of said power line had broken and fallen across the sidewalk area of a street in said town and had remained on the ground, unguarded and charged with electricity, for several hours, to wit, from some time in the early morning until after plaintiff was injured, about 10 o'clock A. M.

Appellant sets forth its reasons for a reversal under eight subdivisions, but we do not see the necessity of considering these contentions separately. With one or two exceptions all the important grounds urged for reversal of the judgment are answered by the boundaries which we place upon the issue of negligence tendered by the pleadings and the admissions by the defendant in connection therewith. A difference between the parties as to the proper interpretation of this issue forms the basis of practically all the errors claimed by appellant.

Paragraph V of the complaint is as follows: "That on or about the 24th day of December, 1922, and for several

months prior thereto, the said defendant carelessly and negligently had constructed, kept, maintained and operated the said electric power line thru the limbs and branches of a tree situated on the sidewalk on said Chestnut street, near the southeast corner of the yard fence of the 'Ogburn residence' in said town of Cottonwood; that said electric wire power line was so constructed, kept, maintained and operated thru the limbs and branches of said tree that the wires thereof came in contact with the limbs, branches and leaves of said tree and caused the same to arc, burn, rub and cut said limbs, branches and leaves; that for approximately three weeks continuously prior to the said 24th day of December, 1922, some of the limbs and branches of said tree had broken and fallen over said wires, causing the same to droop, sag and break and thus greatly endangering the life and limb of persons passing under said tree and said electric wire power line on said sidewalk; that as a result of said wires coming in contact with the limbs and branches of said tree and the limbs and branches thereof falling and bearing upon said wires, and said wires, arcing, burning, rubbing and cutting said limbs and branches, one of said wires broke and fell to the ground, and remained thereon at or near said sidewalk from about six o'clock a. m. until twelve o'clock m. on the said 24th day of December, 1922; that said wire remained connected on one end with the said electric wire power line and was, during all of said time, heavily charged with electricity, which said charged wire was so exposed and unguarded as to permit pedestrians to come in contact with it, all of which the said defendant well knew; that said broken wire lying on the ground near said sidewalk, as aforesaid, was at all of said times owned by and under the control of said defendant.''

This is followed by paragraph VIII, which reads as follows: ''That said plaintiff, Henry Alan Martin, suffered and received said injuries hereinabove mentioned, wholly by reason of the carelessness and negligence of said defendant in permitting said electric power line to remain upon the ground at the time and in the manner aforesaid.''

At the trial and after the impanelment of the jury and when plaintiff's counsel was about to make his opening statement, the defendant, desiring the court to limit the issue of

negligence, tendered the following admission: ''Before proceeding with the trial of the case, we desire to make the following admission. The Pacific Gas and Electric Company desires to admit that on the morning of December 24, 1922, that one of its wires fell, and that the defendant thereafter negligently permitted the wire to remain on the ground until the time alleged in the complaint, and that Henry Alan Martin, the plaintiff in this action, was injured as a result of such negligence. We have made this admission in the interest of shortening the trial of the case, believing that the circumstances justify it; and we will then go to the jury with the sole issue as to the nature and extent of the injuries, and the amount of just compensation to which the plaintiff is entitled.''

This admission was predicated upon the contention that paragraph VIII, above quoted, limited the allegations of paragraph V to one ground of negligence, to wit, negligence arising not from the maintenance of said electric power wire, but negligence arising solely from neglect or failure to sooner discover and remove from the sidewalk area where plaintiff was injured this dangerous instrumentality. Counsel for defendant, having taken this position of weakness, undertook with great skill to turn it into a position of strength. For example, objection was repeatedly and emphatically made to any reference at all by plaintiff's counsel in his opening statement to the jury to the alleged negligent acts which caused the wire to break and fall to the ground. Objection was also strenuously urged even to the reading of portions of said paragraph V of the complaint in the presence of the jury. Objection was also time and again urged to the introduction of proof upon this issue or upon any issue of negligence. Again, repeated and determined opposition was asserted to reference to such alleged acts of negligence or to the question of negligence at all in the argument of counsel. Over and over again his words in this behalf were assigned as misconduct. This same issue arose again on motion for new trial, where the acts and conduct of plaintiff's counsel with respect to this particular subject matter were set forth in an affidavit, the court striking said references from said affidavit and thereafter denying the motion for new trial.

The meaning of this pleading and the acts and conduct of both parties with respect thereto become, therefore, an important consideration at the outset. The said amended complaint was filed on June 22, 1923. On July 12, 1923, a general and special demurrer thereto was filed, but nothing is found therein urging ambiguity or uncertainty between the allegations of paragraphs V and VIII thereof. But pending the hearing on this issue of law, a motion to strike out certain portions thereof was made. This motion was denied and the demurrer overruled on September 7, 1923. A portion of said motion was directed to paragraph V of the amended complaint, but even had it prevailed it would have left the following allegations in said paragraph relating to the cause of the falling of said wire: "That on or about the 24th day of December, 1922, . . . that as a result of said wires coming in contact with the limbs and branches of said tree and the limbs and branches thereof falling and bearing upon said wires, and said wires, arcing, burning, rubbing and cutting said limbs and branches, one of said wires broke and fell to the ground, and remained thereon at or near said sidewalk from about six o'clock a. m. until twelve o'clock m. on the said 24th day of December, 1922; that said wire remained connected on one end with the said electric wire power line and was, during all of said time, heavily charged with electricity, which said charged wire was so exposed and unguarded as to permit pedestrians to come in contact with it, all of which the said defendant well knew; that said broken wire lying on the ground near said sidewalk, as aforesaid, was at all of said times owned by and under the control of said defendant."

The denial *in toto* of this motion to strike certainly put defendant on notice that plaintiff was relying upon all of the acts of negligence set forth in said paragraph V without limitation of any kind. Defendant answered said paragraph and also paragraph VIII specifically, and apparently experienced no trouble in that behalf, for said answer makes specific denial of each of the causes alleged to have contributed to the injury of plaintiff. Finally, answering said paragraph VIII, there is no intimation of doubt about its reference to all of paragraph V, the answer in this connection being: "Answering the allegations contained in para-

graph VIII of said complaint, said defendant denies that said plaintiff suffered or received the said alleged injuries, or any of them, wholly or at all, by reason of the alleged carelessness or negligence, or any carelessness or negligence, of said defendant in permitting said electric power line to remain upon the ground at the time or in the manner alleged in said complaint, or otherwise, or at all; and in this connection said defendant denies that said plaintiff was ever injured by reason of any careless or negligent act or omission on the part of said defendant with respect to the management or control of its said power lines, or any of them, or at all.''

In this portion of the answer, we find a clear interpretation of said pleading as putting forth the issue: '' . . . careless or negligent act or omission on the part of said defendant with respect to the management (and) or control of its said power lines. . . . '' This paragraph VIII, standing alone, would not be a sufficient allegation of negligence, reference to paragraph V being necessary for the gravamen of the charge. If we go there for the allegations of negligence which defendant admitted, why may we not be referred to said paragraph also for all other allegations there found? Why may not it be held that the pleader intended said words ''at the time and in the manner aforesaid'' to refer to all the contributing causes set forth in said paragraph V? The most that may be said of said allegations is that as between the two paragraphs an ambiguity arises. The demurrer, however, as above stated, took no form which permitted the raising of this question. The motion to strike, as above noted, really did not fully and fairly raise it.

Moreover, it must be noted that plaintiff from the beginning of the trial to its close was insisting that he was standing on paragraph V as the specific acts of negligence relied upon, and was contending also that the meaning thereof was in no way limited or qualified by said paragraph VIII. The trial court, as above noted, sustained plaintiff in this construction of the pleading. The defendant had an answer on file consonant with that construction. The defendant at no time subsequent to September 7, 1923, when the motion to strike was denied, could have been in doubt as to the construction of the pleading contended for by plaintiff. De-

fendant enjoyed every right it would or could have had had paragraph VIII been eliminated as surplusage or been amended to harmonize perfectly with paragraph V. Upon no reasonable hypothesis can it be said that defendant has or could have suffered any legal injury arising from this situation. The effect of the action of the court was as though it had struck out paragraph VIII or had amended it so as to fully obviate any cause for the claim that paragraph V was in any way impaired by it. Defendant had a fair opportunity from every standpoint to meet the charge, and in fact attempted to do so as best it could when the plaintiff placed the employee responsible for the maintenance of the wire upon the witness-stand. The language of *Bergen* v. *Tulare County Power Co.*, 173 Cal. 709, 715 [161 Pac. 269, 271], is here applicable: "The order overruling the demurrer to the complaint was a proper one. The case was tried upon a well-defined theory, and even if the complaint had contained the defects of which the demurring party complained, that litigant was not misled because the controversy was fairly determined upon its merits. (*Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, 237 [90 Pac. 936]; *Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663]; *Irrgang* v. *Ott,* 9 Cal. App. 440–442 [99 Pac. 528].)" (See, also, *Grossetti* v. *Sweasey,* 176 Cal. 793, 795 [169 Pac. 687], *Ingalls* v. *Monte Cristo Oil etc. Co.,* 176 Cal. 128, 133 [167 Pac. 857], and *Stein* v. *United Railroads,* 159 Cal. 368, 370 [113 Pac. 663].)

With this construction of the pleading on the issue of negligence, practically all of the contentions of appellant, one by one, must fail. For example, the admission indulged by it, which undertook to limit the proof, becomes an admission of only one of the two or more specific acts of negligence alleged to have proximately contributed to plaintiff's injuries. Such an admission not only did not authorize the court to limit the evidence, but in reality it would have been error if the court had undertaken to so limit it. (*Williamson* v. *Atlas Powder Co.*, 212 App. Div. 68 [208 N. Y. Supp. 301].) This construction of the pleading makes also free from error the act of counsel for plaintiff in referring to all the issues on negligence in his opening statement. This same observation is true with reference to the marshaling

and introduction of evidence to prove each of the specific acts of negligence alleged in said paragraph. This holding renders harmless also the argument of counsel referring to the evidence upon this subject. This same observation is again true as to the objections made to the instructions of the court outlining the legal principles applicable to all the allegations of negligence contained in said paragraph V. This also renders harmless any act of the trial court in striking from the affidavit used on motion for new trial those references to the alleged misconduct of counsel in arguing the features of the evidence relating to the allegations of said questioned paragraph. ■ Indeed, it never has been the law that it was or could be error to prove even admitted allegations of the pleadings if the patience of the trial court would permit it.

"It does not lie in the power of one party, however, to prevent the introduction of relevant evidence by admitting in general terms the fact which such evidence tends to prove, if the presiding justice in his discretion deems it proper to receive it. Parties, as a general rule, are entitled to prove the essential facts, to present to the jury a picture of the events relied on. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight. No exception lies to the admission of relevant evidence under such circumstances." (26 R. C. L., sec. 40, p. 1036; *Dunning* v. *Maine Cent. Ry. Co.*, 91 Me. 87 [64 Am. St. Rep. 208, 39 Atl. 352].)

■ The fact that the evidence admitted might, as an incidental feature thereof, be inflammatory or have a tendency to unduly arouse the jury, does not render such evidence inadmissible. In *Mohn* v. *Tingley*, 191 Cal. 470, 491 [217 Pac. 733], it is said: "The chief objection to all the evidence of which complaint is made is that it served to stir up the prejudice of the jury and arouse sympathy in respondent's favor. But the evidence being admissible, its effect upon the jury would furnish no reason for its rejection."

■ Likewise no prejudicial error can be committed by reading the pleadings to the jury, even though the legal effect of them has been admitted (*Knight* v. *Russ*, 77 Cal. 410, 414 [19 Pac. 698]).

We therefore hold that the said attempt of counsel to limit the proof was abortive and the trial court committed no error in its rulings in respect thereto.

■ The only other assignments of error necessary to notice are two: First, that it was error for the court to admit evidence of existing curvature of the spine, chorea, and endocarditis as results of the injury, and likelihood of cancer in the future, because these ailments were not specifically pleaded, and, second, that the verdict was excessive as the result of passion and prejudice.

The plaintiff's injuries may be described as follows (testimony of Dr. Thompson): The first injury was on the back of his head. The burn there caused the external area of the skull to die and it had to be curetted away about a half inch in diameter, and the external plate had to be removed; the electric current entered the body through the right hand, and his two fingers and thumb were very badly burned, and the little finger was partially removed, that is, about one-third of the bone; the little finger is somewhat pressed in toward the other finger and a portion of it and the muscles are dead from the effects of the burn. The second finger was entirely destroyed to the knuckle joint and had to be removed to that joint; the first finger was destroyed down almost to the joint; the thumb was removed at the last joint; the wire evidently came in contact with this hand through the body and went out through the head and where the boy's body came in contact with the ground; the next injury was a spot right in the left shoulder blade, about two inches long, where it went through the skin; the next burn was about four inches long on the left side, and some of the tissues underneath were destroyed; we took some skin off the leg and covered that over; you can still see the outline of the scar; at the point where this burn occurred the muscles extending to the arm where the electricity entered the body, the upper part of the arm is about half an inch smaller than the left arm, and in the forearm it is about a quarter of an inch smaller than the left arm; the boy was formerly right-handed; the measurements of the boy's chest disclose that the muscles on the right side seemed to be three or four inches smaller than the muscles on the left side of the chest; the tendency of the muscles on the left side of the chest,

being injured and drawn toward the spine, is to pull the muscles to the left of the vertebrae, causing a curvature of the spine about half an inch at the widest place; there was also a spot on the left shoulder blade about two inches in length.

The evidence also showed the boy to have been in robust health and between the age of eight and nine years when the injury was received. With these injuries, emphasis was also made by plaintiff's testimony of the presence of a pronounced case of chorea, commonly known as St. Vitus dance, a nervous affliction causing a systematic contraction of various muscles, sometimes causing spasms of face and neck and a twitching of the eyes. The presence of endocarditis was shown, this being a disease of the muscles of the heart, which is found in about eighty per cent of the cases of chorea. It is described as a chronic inflammatory trouble of heart muscles and, like any other heart trouble, it is a serious affliction. Testimony was also given to the effect that there was some danger of a cancerous growth arising because of poor circulation to and the tender condition of large scars on the body of plaintiff as the result of the burns received at the time in question. Speaking of this situation, one of plaintiff's witnesses said: "I would say there are a certain number of cases of this character where injurious results occur later in life. I would not say that they are certain to appear, but in a certain number of cases they do appear." A second expert testified to the same effect.

The two experts testifying for defendant, after a full and fair examination of plaintiff, gave a similar opinion, one saying: "I don't agree with the doctor in that respect. Cancers do occur in the skin in cases of scarred tissues, but the percentage of cancer that develops in scars is very, very small"; and the other, "There is always a possibility of anything in medicine and surgery. The probability of a malignant growth in this case is very remote."

It should be here carefully noted that as to curvature of the spine, presence of chorea and endocarditis, the facts were made known to the experts of defendant when they met prior to the trial and had ample opportunity to examine and did examine plaintiff. The evidence, however, as to the danger from cancerous growth was apparently not discussed

at the time of said examination. But it should be noted that this apprehension of danger was considered by all the witnesses as more or less remote. It should also be carefully noted that objections to the testimony upon all these subjects were belated and came entirely too late to avail defendant here. The physicians, and particularly, Dr. Thompson, testified fully upon all these subjects before objections of any kind were made. If all that occurred after objections were given full weight, it would add little, if anything, to the testimony that had already entered the record.

Moreover, the court adequately limited the issue in this particular and instructed the jury as follows: "You are therefore instructed that the amount plaintiff may recover in this action is limited to such damages as are the effect of the injuries complained of in his complaint, or reasonably certain to result therefrom." "You are instructed that in estimating the amount of compensation to be awarded plaintiff for the future consequences of the injuries complained of in his complaint he may only recover such damages as by the evidence it is reasonably certain he will suffer in the future as a direct and necessary result of his injuries. This does not mean such future disability, pain or mental anguish, as the evidence may show is 'reasonably probable' and does not mean you may estimate prospective damages upon what you 'believe' might be the plaintiff's future suffering. Such damages may only be awarded for injury or suffering reasonably certain to result in the future."

An examination of the amended complaint shows that the damages contended for might have been defined in clearer language. Nevertheless, we believe that paragraph VII thereof is broad and general enough to admit all this testimony and to make operative the rule stated in *Samuels* v. *California St. etc. Co.*, 124 Cal. 294, 296 [56 Pac. 1115], as follows: "The complaint averred that Mrs. Samuels, by reason of the accident, 'was rendered unconscious for a long period of time, and received great bodily injury, and was made sick, sore, lame, and disabled for a long period of time, to wit, from thence hitherto, during all of which time she thereby suffered great pain, and was thereby then and there hindered and prevented from attending to her business and domestic affairs, and has ever since remained

and continued sick, sore, lame, and disabled, and has suffered, and still continues to suffer, great pain of body and anguish of mind, and is informed and believes that said injuries are of a permanent nature.' Under this averment evidence was admitted of a uterine trouble brought upon Mrs. Samuels by the accident. Such evidence was admissible under the general averment of bodily injury and resulting damage. (*Treadwell* v. *Whittier*, 80 Cal. 574 [13 Am. St. Rep. 174, 5 L. R. A. 498, 22 Pac. 266]; *Montgomery* v. *Lansing etc. Ry. Co.*, 103 Mich. 46 [29 L. R. A. 287, 61 N. W. 543]; *Denver etc. Ry. Co.* v. *Harris*, 122 U. S. 597 [30 L. Ed. 1146, 7 Sup. Ct. Rep. 1286].)''

This rule is an amplification of the rule earlier announced and clearly stated in *Treadwell* v. *Whittier*, 80 Cal. 574, 579 [13 Am. St. Rep. 174, 5 L. R. A. 498, 22 Pac. 266]. The allegations of the complaint do not confine the result of the injuries solely to a disabled arm and hand, but in other respects declare that by reason of said injury and burns plaintiff suffered and still suffers great and excruciating pain and has been maimed and disfigured and will continue to suffer great and unusual pain and mental anguish for a long time to come. These allegations were broad enough at least to admit testimony as to any affliction that had already developed from said injury. Other interpretations of the above rule may be found in the following cases: *Kuhns* v. *Marshall*, 44 Cal. App. 588 [186 Pac. 632]; *Worden* v. *Central Fire Bldg. Co.*, 172 Cal. 94, 97 [155 Pac. 839]; *Lauder* v. *Currier*, 3 Cal. App. 28 [84 Pac. 217]; *Campbell* v. *Los Angeles Traction Co.*, 137 Cal. 565 [70 Pac. 624].

This conclusion also disposes of the contention that the court erred in refusing to peremptorily instruct the jury to disregard all evidence respecting curvature of the spine, chorea, endocarditis, and danger of cancer.

█ The only other contention to be considered is the claim that the verdict is as a matter of law excessive. This contention, in view of what has been said above, requires no discussion. As we understand counsel they really predicate their claim of excessive damages in this respect upon alleged prejudicial matters hereinabove discussed, particularly the reception of evidence, the instructions of the court, the

conduct of counsel, and failure of the court to limit or prevent the admission of evidence of negligence. Being unable to agree with learned counsel for defendant that any prejudicial error was committed in that respect, this assignment of error spends its entire force. There is nothing tangible found in the record to authorize us, as a matter of law, to declare the verdict the result of passion or prejudice.

The judgment is affirmed.

Seawell, J., and Langdon, J., concurred.

SHENK, J., Concurring.—I concur in the judgment. Paragraph VIII of the amended complaint alleged the negligence of the defendant which was the proximate cause of the injury, namely, that the defendant negligently permitted the electric power wire "to remain" upon the ground. The concluding phrase of the allegation, to wit, "at the time and in the manner aforesaid," should be held to refer only to such portions of the allegations of paragraph V as related to the negligence of the defendant in permitting the wire "to remain" on the ground. The admission of the defendant at the commencement of the trial constituted an admission of the negligence alleged in paragraph VIII as so construed and as such was an admission of the negligence that proximately caused the injury. Assuming that this belated admission should not have operated to prevent the plaintiff from proving his allegations of negligence under this material issue, if the court should so permit, it is clear to me that proof of the other allegation of negligence should not have been allowed if the same tendered an immaterial issue. Whether the defendant was negligent in the maintenance of the unbroken wire at or near the scene of the accident, as alleged in paragraph V, was, in my opinion, immaterial. I am not satisfied, however, that the error of the court in permitting proof on the immaterial issue resulted in a miscarriage of justice, as it cannot be said, in view of the seriousness of the injuries inflicted on the minor, that the verdict was excessive. In order so to declare it must appear to this court that the judgment is "so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury." (*Hale* v. *San*

*Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83]; *Mohn* v. *Tingley,* 191 Cal. 470, 492 [217 Pac. 733].) I am not prepared so to declare.

Waste, C. J., concurred.

CURTIS, J., Concurring.—I concur in the judgment. While it may have been error ,for the trial court to have admitted evidence of the defendant's negligence after the admission of its counsel at the commencement of the trial that the plaintiff sustained the injuries complained of by reason of the negligence of the defendant, I am not satisfied the defendant was seriously prejudiced by the introduction of such evidence. By this admission of defendant's counsel the sole issue left to be tried by the jury related to the nature and extent of plaintiff's injuries and the amount of compensation to which plaintiff was entitled by reason thereof. The evidence upon this issue is fully set out in the main opinion. It shows that the plaintiff, a boy in robust health, and of the age of eight or nine years at the time of his injury, was left by reason thereof a helpless cripple, to spend the remainder of his life in pain and suffering, unable to earn a bare existence, and, by reason of his afflicted condition deprived of enjoying any of the pleasures or even comforts of life. With such evidence as to the extent and seriousness of plaintiff's injuries the jury would have been warranted in finding the verdict which they rendered against defendant, and in the absence of any of this evidence of negligence, I am not satisfied that the result of the jury's deliberation would have been different from the verdict which we are now asked to set aside. There has been no miscarriage of justice and whatever error was committed by the court in the admission of evidence showing defendant's negligence did not result in any prejudice to the defendant.

RICHARDS, J., Dissenting.—I dissent from that portion of this opinion wherein it is held that the trial court was not in error in permitting the plaintiff to introduce a large amount of highly prejudicial evidence upon matters which were no longer at issue on the trial of the cause. The defendant's offer to go to trial upon the sole issue ''as to the nature and extent of the injuries and the amount of just compensa-

tion to which the plaintiff is entitled'' could not be otherwise interpreted than as a withdrawal of every denial of negligence in its answer upon which an issue of negligence could be predicated and hence upon which evidence could be producible. Had the defendant's answer contained no denials of the defendant's alleged negligence, but only denials as to the extent of the plaintiff's injuries, could it be contended that the plaintiff would nevertheless be entitled to present a large amount of inflammable evidence upon the subject of the defendant's past and proximate acts of negligence, the obvious purpose of which could be only to arouse resentment and prejudice in the minds of the jurymen? If so, this judgment is correct. If not, it should be reversed.