McCULLOCH, Respondent, *v.* HORTON, Appellant.

(No. 7,718.)

(Submitted November 16, 1937.   Decided November 26, 1937.)

[74 Pac. (2d) 1.]

*Mr. M. J. Lamb* and *Mr. H. M. Gullickson,* for Appellant, submitted an original and a reply brief; *Mr. Gullickson* argued the cause orally.

534

*Mr. H. L. Myers,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff had a verdict and judgment for damages for personal injuries alleged to have been caused by defendant's negligence in the operation of a truck. At the conclusion of

plaintiff's evidence defendant rested without introducing any evidence in his behalf, and then moved the court to direct the jury to return a verdict in his favor. The court denied the motion and submitted the cause to the jury. The jury returned a verdict for plaintiff in the sum of $3,575. The appeal is from the judgment entered on the verdict.

Defendant contends that his motion for directed verdict should have been granted because of plaintiff's contributory negligence. We shall review only so much of the evidence as is necessary to consider the questions presented on this appeal. For a more complete résumé of the facts, see opinion on the prior appeal of the same case, *McCulloch* v. *Horton*, 102 Mont. 135, 56 Pac. (2d) 1344.

The evidence shows that plaintiff was injured while he was holding open the west door of defendant's garage as the latter backed the truck out of the garage. It was in the evening and it was dark. Plaintiff was injured by being struck with the wing of the truck as defendant backed it out of the garage. The wing of the truck had been in an upright position, but was not chained to hold it in place in case the truck was jarred. In backing the truck out of the garage, defendant did not back it straight, but in an angular fashion. Had he backed it straight it would have been going directly south, but he turned it so that it went in a southeasterly direction, causing the front end of the truck to strike the door frame of the garage door on the west side of the garage, thereby jarring the truck to the extent that the west wing of the truck fell and struck plaintiff.

Plaintiff testified, in effect, that the garage doors opened on the south and that there was a brace post and brace pole against which the door would hit when opened, and which kept the door that swung to the west from swinging completely around; that at the time he was struck he stood next to this brace or up against it, and that there was no other place he could stand in holding the door open. As he heard the truck crash into the door jamb he let go of the door and attempted to get away, but could not because of the brace pole. He had observed the truck when it was being driven into the garage on

the evening of the accident, but did not know whether the wings were fastened or not. He knew the wings would stay up without being fastened if the truck were not jarred.

Defendant contends that the physical facts refute the testimony of plaintiff to the effect that he was unable at the time of the accident to avoid the truck wing by reason of physical obstructions. His contention is that photographs introduced in evidence, as well as other testimony, demonstrate that if plaintiff had been standing where he said he was, the wing could not have struck him. Plaintiff in testifying on cross-examination where he stood and why he did not get away before being struck, said: "I tried to get away just as quick as that crashed. What kept me from getting away was, I could not get away because this brace was this way. I tried to get away backwards and this brace interfered with me. I could not run to the west because of the brace. I did not run to the south because the truck was coming that way. If I had moved to the south and had time, I would probably have missed the truck wing, but I did not have time. The side of the truck was not rubbing against the side door, it was just a crash and I don't know just exactly what happened and I started moving. I started back, leaning away as far as the brace would let me. This brace would dig me pretty well in the legs. When leaning backwards I was leaning west and facing east. Had I turned to the right and jumped a few feet to the south I cannot say whether I would have been hit by this wing; I think I would have been. If I had not been struck with the wing, I would have been struck with the truck, anyhow. The truck was backing to the southeast, throwing the front corner right against me." He further said: "When I was holding the door in the position I am now demonstrating, I was standing possibly two and one-half to three feet west of the wheel path of the truck. While I was standing in that position the truck backed out in a southeasterly direction, it throwed the rear end in a southeasterly direction and the front end out this way [indicating]. This is what broke the studding. Whether, had I moved a few

paces south from the position I am now demonstrating, the truck wing would not have hit me, depends on how fast I could move. I could not move as fast as the truck was moving. When I stepped back from having hold of that door, and that brace post came at about my crotch, I could have stepped over it, but I could not have pulled the door back any further. I suppose I would have been further away from the point of danger, but I could not get over that brace post.''

Plaintiff further said: ''I was in the clear if the truck had come out in the right position.'' On his direct examination he had testified: ''In fact, I didn't have time to get away. I let go—I know I started to get away, and the wings of the truck, I know, just dragged past as it came out of the door, and hit me. The wing of this truck struck me over the right hip bone, just across the line of the hip bone, across that bone. It knocked me over that brace, broke the brace, and throwed me back a considerable distance into the weeds there that growed up alongside the garage. It was not possible for me to get out of the way in order to avoid this injury after the car started to back out of the garage.'' The record shows also that plaintiff demonstrated by the use of a blackboard just where he was standing as he held the door open, and this demonstration is not before us. He further testified: ''I would not be facing the garage. I would be facing almost east. This was the position I was standing in a few moments or seconds before I got that injury. A few moments afterwards I quit holding that door. That was not before the wing had dropped. You see, after I got the accident I was not standing there then. I could not be standing there after the accident. When the wings dropped I was standing back at this brace. I could not tell where my hands were at the time the wing dropped on me. It would be pretty hard for me to say whether I had hold of the door at all when the wing dropped—I think I did. When that wing dropped it would strike my left hip, it would have to. I am sure that it struck my left hip and not my right hip, and it struck the point of the hip.''

The brace pole referred to by the witness is not shown in the photographs. We cannot agree with defendant's contention that the physical facts demonstrate that plaintiff testified falsely, or that he was guilty of contributory negligence. As before pointed out, the truck was moving rapidly and plaintiff did not have time, after realizing his danger, to do much of anything to extricate himself from it before the wing had struck him.

Defendant contends that plaintiff himself made contradictory and conflicting statements, and that, under such circumstances his testimony should be viewed least favorably to him under the rule announced in *Morton* v. *Mooney,* 97 Mont. 1, 33 Pac. (2d) 262. But if we so view it, it still does not preclude his recovery, as a matter of law, because of contributory negligence. He was obliged to use reasonable care for his own safety; he was not obliged to anticipate negligence on the part of defendant. (*McCulloch* v. *Horton,* supra.) He did not know that the wing was not chained to hold it in place, but if he did, he was not bound to anticipate that defendant would drive the truck in the manner he did by striking the truck against the door jamb and thus causing the wing to fall. Had the truck been carefully driven, and had it been backed out of the garage straight instead of angularly, the wing would not have fallen, because the truck had evidently been driven into the garage without the wing falling.

That plaintiff might have chosen a position of greater safety does not bar recovery on account of contributory negligence. As was said on the prior appeal: "It is further argued that plaintiff could have occupied a position of greater safety, although the evidence is to the effect that, if the truck had been backed out so that it did not strike the side of the garage doorway, the wing would not have fallen and plaintiff would not have been injured. Mere knowledge of the existence of an offending instrumentality at the place where an injury is suffered does not raise a legal presumption of contributory negligence, unless it further appears that the plaintiff had reason to apprehend danger. [Citing cases.] The failure to an-

ticipate negligence which results in injury is not negligence and will not defeat the action for the injury sustained."

Moreover, even if the plaintiff had testified falsely in one ▆ particular, that would be no ground, standing alone, for denying recovery. It would simply warrant the jury in distrusting his testimony in other respects. (Sec. 10672, subd. 3.) So, if he was not standing exactly where he said he was, or if he could have escaped being hit by the wing of the truck had he known it was going to fall, there is nothing in the record to indicate that he had time to do so after he became aware of the fact that it was about to fall. His contributory negligence, as a matter of law, was not made to appear.

Defendant contends that the court erred in permitting plain- ▆ tiff to prove over his objection that plaintiff was suffering from arthritis in the left hip as a result of the injuries. His contention is that such evidence was not admissible under the complaint. The complaint described the injuries as follows: "Great, severe and permanent bodily injuries, consisting of a bad hernia in the lower abdomen, severe sprain to his back, serious injury to his spine, bad injuries to his left hip, wrenched muscles of his back, injury to the walls and muscles of and around his stomach and to his head, back, shoulders and arms; the ligaments of his left hip were torn loose and the muscles thereof stretched and the bones of his left hip were fractured and splintered; and his nervous system was greatly shocked and he was sorely wounded and disabled and made sick and lame and sore; and he suffered therefrom then and has suffered ever since and now suffers therefrom great pain and physical weakness, and he has endured ever since and now endures great mental and physical suffering and discomfort and nervousness and loss of sleep and appetite; and his left side especially causes him continually great pain and suffering; and plaintiff is informed and believes, and alleges upon information and belief, that because of all thereof he will always suffer much physical pain and weakness and will never be strong or normal or free from pain or suffering and will ever have a limp in his left leg, as he now has."

Defendant relies strongly upon the case of *Gordon* v. *Northern Pac. Ry. Co.*, 39 Mont. 571, 104 Pac. 679, 18 Ann. Cas. 583. In that case the complaint alleged complete destruction of the right eye. Plaintiff over objection introduced evidence that as a result of the injury to his right eye, the sight of his left eye was greatly impaired. This was held to be error. This court in that case held that such evidence was inadmissible unless there were proof that the damage to the left eye was the necessary consequence of the injury to the right eye. Here the proof showed that arthritis was a probable, but not a necessary, consequence of bodily injuries, and hence defendant contends that evidence thereof was inadmissible. We think there is a substantial difference between this case and the *Gordon Case*. In the latter the plaintiff "particularized the injury as the destruction of the sight of his right eye." Had this been followed by an allegation of a general nature to the effect that, because of the injury, his vision had been impaired, then it is likely this court would have permitted evidence of trouble in the other eye as did the supreme court of Indiana in *Emerson-Brantingham Co.* v. *Growe*, 191 Ind. 564, 133 N. E. 919. In other words, the complaint before us here does not particularize all the injuries as did that involved in the *Gordon Case*. To be sure, some of the injuries were particularized, but some were alleged in the most general terms.

The case of *Simon* v. *S. S. Kresge Co.*, (Mo. App.) 103 S. W. (2d) 523, is also relied upon by the defendant. While the facts in that case were somewhat different from those here, the reasoning of the court sustains defendant's contention. We believe, however, that the court failed to give proper effect to the general allegations of injuries there made.

Defendant cites and relies upon other cases, at least some of which, in principle, sustain his contention, but we prefer to follow cases taking the opposite view. Other courts have announced a different result under facts very similar. This court, under allegations of bodily injuries general in their nature, has

held that evidence of a rupture is admissible. (*Zanos* v. *Great Northern Ry. Co.*, 60 Mont. 17, 198 Pac. 138.)

In *Washington* v. *City of Seattle*, 170 Wash. 371, 16 Pac. (2d) 597, 86 A. L. R. 113, it was held that under an allegation of a dislocation of a shoulder, evidence of neuritis was admissible.

In *Montgomery* v. *Lansing City Elec. Ry. Co.*, 103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287, under general allegations of injuries, evidence of development of consumption was held proper.

In *Scott* v. *Lindgren*, 97 Pa. Sup. Ct. 483, the court held that under an allegation of "severe shock to her nervous system," evidence of a severe attack of asthma was admissible.

In *Carton* v. *Eyres etc. Co.*, 117 Wash. 536, 201 Pac. 737, under general allegations such as those here, evidence of neurasthenic conditions was held admissible without mention thereof in the complaint.

In *Mazzani* v. *Keyes*, 200 Ky. 783, 255 S. W. 695, it was held that under allegations very similar to those in this case, evidence of tympanitis was admissible.

In *Louisville & N. R. Co.* v. *Schneider*, 174 Ky. 727, 192 S. W. 834, it was held that allegations of injury to the bowels was sufficiently broad to admit evidence of hernia. The court in that case said: "Appellant also complains that, under the allegations of the petition alleging injury to appellee's bowels, it was error to admit evidence of the hernia; but this objection is not well taken, because hernia may be, and frequently is, the result of an injury to the abdomen, in which the bowels are involved, and is, in such cases, but the evidence of such injury."

In *Texas Elec. Ry. Co.* v. *Worthy*, (Tex. Civ. App.) 250 S. W. 710, there were specific and general allegations of injuries much the same as here, and the court held that evidence of neurosis was admissible. In *Dallas etc. Co.* v. *Price*, (Tex. Civ. App.) 94 S. W. (2d) 884, under general allegations such as those here, evidence of the displacement of the uterus was admissible.

To the same general effect is the case of *Jenkins* v. *Northern Pac. Ry. Co.*, 44 Mont. 295, 119 Pac. 794. (Compare, also,

*Kuhns* v. *Marshall,* 44 Cal. 588, 186 Pac. 632; *Knight* v. *Kansas City Pub. Serv. Co.,* (Mo. App.) 49 S. W. (2d) 1074; *Wilson* v. *Consolidated Dressed Beef Co.,* 295 Pa. 168, 145 Atl. 81; *Lauder* v. *Currier,* 3 Cal. App. 28, 84 Pac. 217; *Machado* v. *Harm,* 112 Cal. App. 748, 297 Pac. 626; *Safeway Cab Service Co.* v. *Minor,* (Okl.) 70 Pac. (2d) 76; *Gulf Research Dev. Co.* v. *Linder,* 177 Miss. 123, 170 So. 646; *Samuels* v. *California St. Cable Ry. Co.,* 124 Cal. 294, 56 Pac. 1115; *Martin* v. *Pacific Gas & Elec. Co.,* 203 Cal. 291, 264 Pac. 246, 251.)

The complaint before us, as above stated, contains general allegations. If defendant desired a more specific description of the injuries, his remedy was ·by motion to make the pleading more definite and certain. (*Zanos* v. *Great Northern Ry. Co.,* supra; *Jenkins* v. *Northern Pac. Ry. Co.,* supra; *Gordon* v. *Northern Pac. Ry. Co.,* supra; *Cassidy* v. *Berkovits,* 169 Ky. 785, 185 S. W. 129; *Scott* v. *Lindgren,* supra.)

The next contention is that the court erred in refusing to give defendant's offered instruction reading: "Should you believe from the evidence that the plaintiff was negligent, and that the defendant was also negligent, you must not compare their negligence and thereby make up your verdict against the party that may appear to you from the evidence to have been the more negligent and in favor of the party that may appear to have been guilty of the lesser degree of negligence, because under the law of this state if a plaintiff was guilty of any negligence, however slight, that proximately contributed to the injuries he receives, he cannot recover by this action." And its offered instruction reading: "You are instructed that if you believe from the evidence that the plaintiff, when he was holding the garage door open, unnecessarily and without defendant's knowledge, knowingly stood in a position of dangerous proximity to the truck as it was being backed out of the garage, then your verdict must be for the defendant."

Both of these offered instructions were properly refused. The instruction first quoted was open to the objection that it was erroneous in the use of the words "however slight."

546

There is language used in the cases of *Autio* v. *Miller*, 92 Mont. 150, 11 Pac. (2d) 1039, and *Daniels* v. *Granite Bi-Metallic Con. Min. Co.*, 56 Mont. 284, 184 Pac. 836, which would indicate that the use of these words is proper when an instruction on contributory negligence is applicable. However, neither of these cases passed upon this point; the question was not presented to the court. Other courts are divided on the propriety of such an instruction. We prefer to follow the more humane and just rule announced by Thompson in section 170, volume 1 of his work, Commentaries on the Law of Negligence, where he said: "Some of the cases say that if the negligence of the plaintiff, or the person killed or injured, contributed in any degree, however slight, to produce the injury, there can be no recovery. But this doctrine which visits upon the plaintiff or person injured all the consequences of the defendant's negligence, although the plaintiff's negligence may have been slight or trivial and that of the defendant gross and wanton, is cruel and wicked and shocks the ordinary sense of justice of mankind. Such a rule finds no proper place in an enlightened system of jurisprudence. Nevertheless, it has been reasoned that 'the injury must be attributable to the defendant's negligence, and to that alone; that if it was occasioned, *in any degree*, by plaintiff's own negligence, he is without redress.' We shall endeavor to prove, in this and the succeeding chapters of this title, that this is not the modern law. It is not the law, because, as we shall see, if the negligence of the person killed or injured was the *remote* or *far-off* cause of the catastrophe, and that of the defendant was the proximate or near cause of it, the law permits the plaintiff to recover damages; and yet in such a case it cannot be said that the negligence of the person killed or injured did not, *in some degree*, contribute to produce the death or injury." It should be remembered that the proposed instruction used the words "contributed to" rather than the word "caused," and proposed to preclude recovery if slight negligence of plaintiff contributed to the injury. This is not the *modern rule though it finds some support in the authorities.*

As to the second proposed instruction above quoted, there was no evidence tending to-show that plaintiff knowingly stood in a position of dangerous proximity to the truck as it was being backed out of the garage, and the refusal to give it was proper.

Finding no error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.