**In the Matter of Rehabilitation of AMER-ICAN INVESTORS ASSURANCE COM-PANY, David G. Elmore, Appellant.**

**No. 13388.**

Supreme Court of Utah.

April 17, 1974.

F. S. Prince and Steven L. Taylor of Prince, Yeates, Ward, Miller & Geldzahler, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., William G. Gibbs, Sp. Asst. Atty. Gen., John F. Piercey of Piercey, Bradford & Marsden, Salt Lake City, for respondents.

CALLISTER, Chief Justice:

Shareholder, David G. Elmore, on behalf of himself and all other shareholders of American Investors Assurance Company

(hereinafter A.I.A.) appeals from a decree of the district court approving a plan of rehabilitation recommended by the deputy insurance commissioner.

In September 1971, the insurance commissioner applied for an order directing him to rehabilitate A.I.A., a domestic insurer, on the ground that the company was insolvent, as provided in Section 31–28–2, U.C.A.1953. The trial court issued an order placing the company under control of the commissioner and appointing a special deputy commissioner on October 21, 1971. Thereafter, the deputy, in accordance with Section 31–28–3, U.C.A.1953, took possession of the assets of the insurer and conducted the business. Pursuant to an invitation of the deputy to the insurance industry, two companies proposed management contracts and John F. Piercey and Franklin Industries, Inc., each proposed a plan of rehabilitation. The deputy recommended the proposed rehabilitation plans, which provided for the infusion of new assets rather than the management plans which provided for the continuation of the existing business with the present assets. The commissioner ultimately recommended the adoption of the Piercey plan, and upon hearing, the court approved and entered a decree on April 20, 1973.

Under the Piercey plan, he would form a new corporation into which he would transfer one million dollars in assets, and he would receive all the issued shares. The new corporation would then assume all of the assets and liabilities of A.I.A. to its policy holders and creditors subject to certain conditions. The practical effect of the Piercey plan was to nullify the equity interest of the shareholders in A.I.A.; however, it permitted continuation of the insurance business of A.I.A. through a new corporation, funded with new assets, with a consequent minimization of loss to policy holders and creditors.

The trial court found that the rehabilitation plan was fair and equitable, that all claims and creditors of all classes would receive substantially more under the plan than they would under the liquidation of A.I.A., and that conservation of the existing policies of A.I.A. was in the public interest. The trial court found that considering the present net solvency impairment of A.I.A. in the amount of $1,640,130, exclusive of recovery claims, no present distribution of assets would be made to the existing shareholders of A.I.A. if liquidation were ordered. The findings further recited that the plan did not discriminate against the shareholders of A.I.A.; that prompt payment of death claims and other matured policy claims was in the best interest of the claimants, the insurance industry, and the public generally; that since September 30, 1971, no assets had been infused by the shareholders to cure the insolvency of A.I.A.; that no evidence was presented to show that the stock of A.I.A. had any present value; and that the use of the new corporation as a vehicle through which to accomplish the rehabilitation of A.I.A. was reasonable, equitable, and necessary.

On appeal, shareholder, Elmore, contends that the plan approved by the trial court was unfair, inequitable, and discriminatory to the shareholders of A.I.A. He contends that the practical effect of the plan is to liquidate rather than to rehabilitate the company, since the plan transferred all the assets and liabilities to the new corporation and deprived the shareholders of any participation in the assets of the company. He asserts that under Section 31–28–3, U.C.A.1953, there are two options, and the plan does not conform to either. He claims that either a company must be liquidated or upon rehabilitation the insurer is to resume possession of its property and the conduct of its business.

A similar argument was urged in Carpenter v. Pacific Mutual Life Insurance Company of California,[1] wherein the appellants urged that the term "rehabilitation" necessarily implied the continuance

1. 10 Cal.2d 307, 74 P.2d 761, 777 (1937).

of the old company as a going concern. They claimed that the term under the insurance code could not be construed so as to permit the organization of a new company to which the assets of the insolvent company were transferred for the purpose of continuing the old company's business.

The court responded:

> . . . the Legislature was careful to provide for the rehabilitation and reinsuring of the "business" of an insolvent company. The Legislature provided for the rehabilitation of the business of the old company, not of the company itself. The Code when read as a whole discloses a clear and unequivocal intent to preserve whenever possible the "business" of the insolvent company, and to preserve such business—if to rehabilitate such business—a new corporation must be organized, the power clearly exists.[2]

In the *Carpenter* case[3] the court observed that insurance was a public asset, a basis of credit, and a vital factor in business activity. If an insurance company encounters financial difficulties, the situation must be remedied. The company either must be liquidated and its assets distributed to the creditors with the consequence of injury to the policyholders who are deprived of insurance protection or the business must be rehabilitated. The public has an important interest in preserving the business, and liquidation is the last resort. The insurance code reflects the public interest involved and provides for rehabilitation if possible.[4]

■ Shareholder, Elmore, further challenges the finding that liquidation would produce no present distribution of assets to the shareholders. He claims that under the accounting techniques which insurance companies must use certain assets are excluded but this accounting method ignores the reality of the situation. He asserts that certain assets may have substantial value, although they do not qualify as admitted assets under the insurance laws. He calculates that there might be a minimum net equity of $406,000 which could and should have been preserved for the shareholders of A.I.A.

This argument is without merit, the issue of the insolvency of an insurance company must be according to the provisions of the insurance code. There is no basis to hold that the accounting techniques are unrealistic and that the finding of the trial court is erroneous on the tenuous ground asserted.

■ Shareholder, Elmore, further contends that the trial court lacked the power to transfer the name of A.I.A. to the new corporation pursuant to the rehabilitation proceedings.

Section 31–28–3, U.C.A.1953, provides that the commissioner take possession of the property of the insurer under the rehabilitation proceeding. The good will of A.I.A. was part of this property and was transferrable with the other assets of the insurer. In the *Carpenter* case[5] the court cited authority and explained that in working out a plan of rehabilitation, a new corporation may be formed to receive the assets of the old in order to save the profitable business and good will of the old company. The transfer to the new company of the desirable assets of the old may be deemed in the ultimate interests of all the creditors, for thereby valuable, intangible assets may be saved that by liquidation would have been lost.[6]

This court is not without sympathy to the shareholders, who have lost their equitable interest in the company; however,

---

2. See 2 Couch on Insurance (2d), Sec. 22:23, p. 692: "In general, the rehabilitation statutes place upon the Conservator the responsibility of devising such a plan for rehabilitation as will result in the successful continuation of the business of the insurer, whether by the identical insurer, or by a new insurer to be formed to take over the business and assets of the old insurer, . . . ."

3. Note 1, supra.

4. At page 775 of 74 P.2d.

5. Note 1, supra.

6. At pp. 776–777 of 74 P.2d; also see 2 Couch on Insurance (2d), Sec. 22:24, pp. 694–695.

the court in Kueckelhan v. Federal Old Line Insurance Company (Mutual) [7] succinctly expressed the law:

> The primary duty impressed by the statute upon the Commissioner in a rehabilitation proceeding is to correct or remove the causes and conditions which have made the rehabilitation proceeding necessary and, if possible, to conserve and restore the company to a viable status for the benefit of the policyholders.
> . . . As the program of rehabilitation takes form and the steps unfold, the trial court in its supervisory and reviewing role may not substitute its judgment for that of the Commissioner, but may and should only intervene or restrain when it is made to appear that the Commissioner is manifestly abusing the authority and discretion vested in him and/or is embarking upon a capricious, untenable or unlawful course.

The judgment of the trial court is affirmed. Costs are awarded to respondent.

HENRIOD, ELLETT, CROCKETT and TUCKETT, JJ., concur.

---

7. 74 Wash.2d 394, 444 P.2d 667, 674 (1968).